[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10566

_____

D.C. Docket No. 0:12-cv-62238-JIC


SEMINOLE TRIBE OF FLORIDA,

Plaintiff–Appellant,

versus

STATE OF FLORIDA DEPARTMENT OF REVENUE,
MARSHALL STRANBURG,
in his official capacity as the Interim Executive Director and Deputy Executive
Director of the Florida Department of Revenue,

Defendants–Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 5, 2014)

Before PRYOR and JORDAN, Circuit Judges, and FRIEDMAN,[*] District Judge.

PRYOR, Circuit Judge:

_____

[*] Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting
by designation.

This appeal requires us to decide whether the sovereign immunity of Florida, as confirmed by the Eleventh Amendment, U.S. Const. Amend. XI, bars a federal complaint by an Indian tribe against the Florida Department of Revenue and its Executive Director for a declaratory judgment that the tribe is exempt from paying a Florida tax on fuel and for an injunction requiring a refund of taxes paid. The Seminole Tribe of Florida contends that a Florida tax on motor and diesel fuel purchased off tribal lands violates the Indian Commerce Clause, U.S. Const. Art. I, § 8, cl. 3, the Indian sovereignty doctrine, and the Equal Protection Clause, U.S. Const. Amend. XIV, § 1. After a state court rejected a complaint by the Tribe about fuel taxes paid between 2004 and 2006, the Tribe filed a federal complaint about taxes paid between 2009 and 2012. The district court dismissed the federal complaint based on a judicial doctrine that bars federal district courts from reviewing state court judgments, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983), and, alternatively, based on the Tax Injunction Act, 28 U.S.C. § 1341. But we need not decide the correctness of those rulings because we conclude that the Department and its Director enjoy sovereign immunity from this suit. We **AFFIRM** the dismissal of the complaint filed by the Tribe.

## I. BACKGROUND

The Seminole Tribe of Florida is a federally recognized Indian tribe. *See Indian Entities Recognized & Eligible to Receive Services from the United States Bureau of Indian Affairs*, 78 Fed. Reg. 26,384, 26,387 (May 6, 2013); Indian Reorganization Act of June 18, 1934, § 16, ch. 576, 48 Stat. 984, 987 (codified as amended at 25 U.S.C. § 476). Like any other entity in Florida, the Tribe pays a state tax on the purchase of fuel. *See* Fla. Stat. § 206.01 *et seq*. The State, counties, and municipalities use revenues from that tax to construct and repair transportation facilities, roads, bridges, and paths. *See, e.g.*, Fla. Const. Art. 12, § 9(c)(5); Fla. Stat. §§ 206.60(1)(b)(1), 206.605(1), (2). For administrative convenience, the State precollects the tax from suppliers of fuel before the suppliers sell the fuel to consumers. *See* Fla. Stat. § 206.41(4)(a), (6). The cost of the tax is then passed on to the consumer of the fuel when the consumer purchases fuel at a retail gas station. Even though the Department precollects the tax from a supplier before the fuel is sold to the ultimate consumer, Florida law provides that the "legal incidence of the tax" is "on the ultimate consumer." *Id.* § 206.41(4)(a).

Florida law exempts some consumers, but not the Tribe, from the fuel tax. If a consumer is exempt from the tax, then the consumer may obtain a refund from the Department for the amount of fuel taxes the consumer has paid. *Id.* § 206.41(4), (5). For example, the Department refunds any fuel taxes paid by a

3

municipality for fuel used in a municipal vehicle, and the municipality uses that refund for the construction and maintenance of roadways within its borders. *Id.* § 206.41(4)(d). Likewise, any consumer who uses fuel for agricultural, aquacultural, commercial fishing, or commercial aviation purposes is exempt from the tax and eligible for a refund from the Department. *Id.* § 206.41(4)(c).

Florida law does not exempt the Tribe from the fuel tax, and the Department has refused to refund taxes the Tribe paid when it purchased fuel at gas stations located off tribal lands. The Tribe argues that, because it maintains its own roadways, it is entitled to a refund for taxes paid for fuel expended on tribal lands by vehicles carrying out essential government services, regardless of where the Tribe purchased the fuel. The Department argues that the Tribe does not actually use the fuel on tribal lands because Florida law defines the "use" of fuel as occurring when consumers fill the fuel tanks in their vehicles. *Id.* § 206.01(24) (defining "use" as "the placing of motor or diesel fuel into any receptacle on a motor vehicle from which fuel is supplied for the propulsion thereof").

The Tribe has twice sued the Department about whether the Tribe is exempt from the fuel tax. The Tribe filed the first suit in a state court and the second in a federal court. Both times the Tribe lost.

The Tribe first sued the Department in a Florida court for a refund of fuel taxes paid between January 1, 2004, and February 28, 2006. The Tribe also sought

4

a declaratory judgment that the fuel expended on tribal lands was exempt from the tax. A Florida court of appeals held that the tax did not violate the Indian Commerce Clause because the State levied the tax at gas stations located off tribal lands. *Fla. Dep't of Revenue v. Seminole Tribe of Fla.*, 65 So. 3d 1094, 1097 (Fla. 4th Dist. Ct. App. 2011), *review denied*, 86 So. 3d 1114 (Fla. 2012).

The Tribe then filed a federal complaint that contested liability for $393,247.30 in fuel taxes paid by the Tribe between June 7, 2009, and March 31, 2012. The Tribe sought both declaratory judgments and an injunction in the following six counts of its complaint: first, a declaratory judgment that the Tribe is exempt from the fuel tax because the tax, levied on fuel expended on tribal lands, violates the Indian Commerce Clause, U.S. Const. Art. I, § 8, cl. 3; second, a declaratory judgment that the Tribe is exempt from the fuel tax because the tax, levied on fuel used to provide essential government services, violates the Indian Commerce Clause and the Indian sovereignty doctrine; third, a declaratory judgment that the Tribe is entitled to a refund under the Equal Protection Clause, U.S. Const. Amend. XIV, § 1, because Florida exempts fuel used in vehicles operated by municipal or county governments from the tax, but not fuel used in vehicles operated by the Tribe that perform essential government services; fourth, a declaratory judgment that the Tribe is entitled to a refund under the Equal Protection Clause because Florida exempts other groups that do not use state

5

roadways, but does not exempt the Tribe even though it uses fuel on its roadways on tribal lands; fifth, a declaratory judgment that the Tribe is entitled to a refund under the Equal Protection Clause because Florida uses the tax revenues for the construction and maintenance of roadways, and the Tribe constructs and maintains its own roadways on its tribal lands; sixth, an injunction barring the Department from refusing to refund the taxes paid for fuel that the Tribe used on its land to perform essential government services.

The district court dismissed the complaint for lack of subject-matter jurisdiction. The district court ruled that the decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983), barred the Tribe from relitigating its earlier complaint filed in Florida court. The district court also ruled, in the alternative, that the Tax Injunction Act, 28 U.S.C. § 1341, barred the complaint. The district court did not address whether sovereign immunity or res judicata barred the complaint even though the Department and its Director raised those defenses too.

## II. STANDARD OF REVIEW

We review the dismissal of a complaint *de novo*. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).

6

### III. DISCUSSION

The Tribe challenges both grounds upon which the district court dismissed its complaint, but we need not decide those issues if we affirm the dismissal on the alternative ground that sovereign immunity bars the complaint. The Tribe argues that its federal complaint did not seek to overturn a previous state court judgment because the previous state judgment involved taxes paid between 2004 and 2006 and the later federal complaint challenged taxes paid between 2009 and 2012. *Cf. Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 1527 (2005) ("If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached[,] . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." (internal quotation marks omitted)). The Tribe also argues that the Tax Injunction Act, 28 U.S.C. § 1341, did not bar its complaint because another federal statute, 28 U.S.C. § 1362, as interpreted in *Moe v. Confederated Salish & Kootenai Tribes of the Flatheads Reservation*, allows the Tribe to challenge the state tax. 425 U.S. 463, 473–75, 96 S. Ct. 1634, 1641–42 (1976) ("Here the United States could have made the same attack on the State's assertion of taxing power as was in fact made by the Tribe."). But we may affirm the dismissal of a complaint on any ground supported by the record even if that ground was not considered by the district court, *Powers v. United States*, 996 F.2d

1121, 1123–24 (11th Cir. 1993), and state sovereign immunity is a threshold issue that we must decide before requiring a state department and its officers to answer a complaint against them. *See Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot.*, 91 F.3d 1445, 1448–49 (11th Cir. 1996).

Although the Eleventh Amendment "is neither a source of nor a limitation on states' sovereign immunity from suit," the Amendment recognizes that states ordinarily enjoy sovereign immunity from suits in federal court. *Stroud v. McIntosh*, 722 F.3d 1294, 1298 (11th Cir. 2013). By its terms, the Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The third Congress swiftly proposed and the states then ratified the Amendment after the Supreme Court decided, in *Chisholm v. Georgia*, that a citizen of South Carolina could sue the State of Georgia in a federal court. 2 U.S. (2 Dall.) 419, 420, 479 (1793), *superseded by constitutional amendment*, U.S. Const. Amend. XI. *Chisholm* "created such a shock of surprise throughout the country that, at the first meeting of congress thereafter, the eleventh amendment to the constitution was almost unanimously proposed" to override the decision. *Hans v. Louisiana*, 134 U.S. 1, 11, 10 S. Ct. 504, 505 (1890).

8

We understand the Eleventh Amendment in the light of this history and "not so much for what it says, but for the presupposition which it confirms." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122 (1996) (internal quotation mark and alteration omitted). That presupposition is two-fold: each state is a separate sovereign, and each state, as a sovereign, cannot be haled into a federal court without its consent. *Id*. Any contrary understanding of state sovereign immunity "is an attempt to strain the constitution and the law to a construction never imagined or dreamed of." *Hans*, 134 U.S. at 15, 10 S. Ct. at 507.

In its complaint, the Tribe seeks declaratory judgments that it is exempt from the fuel tax under the Indian Commerce Clause, the Indian sovereignty doctrine, and the Equal Protection Clause and an injunction that would bar the Department and its Director from refusing to issue refunds of fuel taxes the Tribe has paid, but the sovereign immunity of Florida bars this complaint. Although Congress has the exclusive authority to regulate the internal affairs of Indian tribes, state sovereign immunity "is not so ephemeral as to dissipate when the subject of the suit is an area . . . under the exclusive control of the Federal Government." *Seminole Tribe*, 517 U.S. at 72, 116 S. Ct. at 1131. The sovereign immunity of Florida extends to both the Department and its Director. We discuss the immunity of each defendant in turn.

9

An Indian tribe can sue a state and its departments in federal court only if Congress has validly abrogated the immunity of the state or if the state has waived its immunity, but neither of those conditions has occurred here. Congress has not abrogated the sovereign immunity of Florida from suits by Indian tribes for money damages or for injunctive or declaratory relief. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269, 117 S. Ct. 2028, 2034 (1997) (ruling that sovereign immunity of Idaho barred suit for injunctive and declaratory relief); *Seminole Tribe*, 517 U.S. at 72, 116 S. Ct. at 1131 (ruling that the Indian Commerce Clause did not empower Congress to abrogate the sovereign immunity of Florida); *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 788, 111 S. Ct. 2578, 2585–86 (1991) (holding that a federal statute, 28 U.S.C. § 1362, providing federal jurisdiction for suits by Indian tribes, did not abrogate state sovereign immunity for suits for money damages). And Florida has not waived its sovereign immunity from this federal suit. Without a valid abrogation by Congress, Florida, "an unconsenting State," is immune from suit "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984) (internal quotation mark omitted).

The Tribe also cannot circumvent the sovereign immunity of Florida by suing the Director of the Department based on the decision in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908). To be sure, a federal court has jurisdiction to

10

entertain suits against individual officers of a state "who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce . . . an unconstitutional act, violating the Federal Constitution." *Id.* at 155–56, 28 S. Ct. at 452; *see also Va. Office for Prot. & Advocacy v. Stewar*t, ___ U.S. ___, 131 S. Ct. 1632, 1638 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."). But the Tribe cannot wiggle into this exception through creative pleading. *See Coeur d' Alene*, 521 U.S. at 270, 117 S. Ct. at 2034 ("The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading."). When the Tribe names an individual officer as a defendant in its complaint, we must ask whether the suit is "in essence one for the recovery of money from the state." *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464, 65 S. Ct. 347, 350 (1945), *overruled in part*, *Lapides v. Bd. of Regents*, 535 U.S. 613, 622–23, 122 S. Ct. 1640, 1645–46 (2002) (holding that a state might waive its sovereign immunity when it removes a case to federal court and overruling *Ford Motor Co.* only insofar as it is inconsistent with the waiver rule in *Lapides*). If it is, then "the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants." *Id.*

11

The Department, not the Director, is the "real, substantial party in interest" in this suit. *Id.* In *Ford Motor Company*, the Supreme Court explained that a suit for a tax refund that named individual officers as defendants was in fact a suit against the state and barred by sovereign immunity. *Id.* at 463, 65 S. Ct. at 350. Indiana law required a taxpayer to initiate an action against the "department" for taxes illegally exacted, and any judgment obtained from that action would be satisfied by "funds in the state treasury." *Id.* (internal quotation marks omitted) (quoting Ind. Stat. Ann. § 64-2614(b) (1943)). The Supreme Court ruled that the Indiana statute "clearly provide[d] for a[n] action against the state, as opposed to one against the collecting official individually," and the federal suit "therefore constitute[d] an action against the state, not against the collecting official as an individual." *Id.* In the same manner that Ford joined the members of the Indiana Department of the Treasury in *Ford Motor Company*, the Tribe has joined the Director of the Department as a "representative[] of the state, not as [an] individual[] against whom a personal judgment is sought." *Id.* at 463–64, 65 S. Ct. at 350. Its "claim is for a 'refund,' not for the imposition of personal liability on individual defendants for sums illegally exacted." *Id.* at 464, 65 S. Ct. at 350.

Moreover, the relief that the Tribe seeks is equitable in name only. This suit is not to enjoin an individual officer from committing a violation of federal law; it is instead a suit for monetary relief to be financed by the Florida fisc. *See Va.*

12

*Office for Prot. & Advocacy*, 131 S. Ct. at 1639 ("*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury."). A declaratory ruling that the Tribe is exempt from the tax would amount to a judgment that the Tribe is entitled to a refund under Florida law. *See* Fla. Stat. § 206.41(4), (5). The tax is precollected from suppliers of fuel, so every consumer must pay the tax at the pump, and any exempt consumer may then collect a refund after-the-fact. *Id.* § 206.41(5). And a judgment "[e]njoining the Department and its Executive Director's continued and prospective refusal to refund the Fuel Tax," as the Tribe demands in its complaint, would amount to a money judgment against Florida. The Tribe seeks a refund paid by the State, not from the director's pocket. *See Edelman v. Jordan*, 415 U.S. 651, 668, 94 S. Ct. 1347, 1358 (1974). We cannot declare the Tribe exempt from the fuel tax, nor can we enjoin the Department and its individual officer to pay the Tribe a refund. Granting either form of relief would be tantamount to a judgment that Florida must pay the Tribe cash from state coffers. State sovereign immunity forecloses that relief.

We reject our dissenting colleague's contention that sovereign immunity does not bar a declaratory judgment exempting the Tribe from the tax, which he argues is somehow different from a declaratory judgment and an injunction requiring a refund of the tax. Either form of relief is equivalent to "a retroactive award which requires the payment of funds from the state treasury." *Edelman*, 415

U.S. at 677, 94 S. Ct. at 1362. As the Tribe alleges in its complaint, the Florida statute "provides exemptions from the Fuel Tax," and "[a]ny consumer who pre-pays the Fuel Tax at the pump and then uses the fuel for an exempt purpose is entitled to a refund of the Fuel Tax." The right to an exemption is the right to a refund under Florida law, and sovereign immunity bars that relief because it is compensatory in nature and because Florida is the real, substantial party in interest.

Our dissenting colleague argues that the relief the Tribe seeks is prospective, but he fails to explain how that relief is anything other than an award of damages even if it could conceivably be described as prospective in nature. The doctrine of sovereign immunity requires us to ask more than whether relief is "prospective" or "retrospective." "Prospective" relief will not overcome the sovereign immunity of a state when that relief is an award of money damages camouflaged as an injunction or a declaratory judgment. The Tribe labels the relief it seeks as a declaratory judgment, but that label does not end our inquiry. In *Edelman*, the Supreme Court rejected the argument that *Ex parte Young* allows "any form of relief[,] . . . no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled 'equitable' in nature." 415 U.S. at 666–67, 94 S. Ct. at 1357; *see also Papasan v. Allain*, 478 U.S. 265, 279, 106 S. Ct. 2932, 2941 (1986) ("[W]e look to the substance rather than to the form of the relief sought."). When, as in this appeal, prospective relief

14

is the "functional equivalent of money damages," *Ex parte Young* does not apply. *Summit Med. Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999); *see also Va. Office for Prot. & Advocacy*, 131 S. Ct. at 1643 (Kennedy, J., concurring) (highlighting that the Supreme Court in *Edelman* "applied the [*Ex parte Young*] exception to an affirmative prospective order but not to equitable restitution, for the latter was too similar to an award of damages against the State"). A declaratory judgment exempting the Tribe from the tax is the functional equivalent of ordering recurring payments of money damages. The Tribe points to no other way around the alleged constitutional violation other than a recurring refund paid to the Tribe from the Department after it precollects the tax from the fuel suppliers.

The injunctive relief sought in the decisions upon which the dissent relies is materially different from the compensatory relief the Tribe seeks here. When a Tribe challenges the assessment of a tax by a tax collector, the Tribe might sue to enjoin the tax collector from collecting the illegally assessed tax. That suit asks only that the tax collector not come upon the Tribe's land to collect the tax, and everyone's money stays in everyone's pockets. In that suit, "no award of any money need be made from the state treasury. Instead, money which state officials would otherwise collect from the [plaintiffs], in violation of federal law, will be protected from collection." *CSX Transp. Inc. v. Bd. of Pub. Works of W. Va.*, 138 F.3d 537, 542 (4th Cir. 1998); *see id.* ("The Railroads have not *lost* any money: the

money allegedly illegally assessed is still safely in their pockets."). But in this suit, the Tribe will already have paid a fuel supplier, who is not a party to this suit, for the taxes that the supplier paid to the Department. The declaratory judgment that the Tribe seeks would demand that the tax collector award the Tribe money from state coffers equaling the amount of fuel taxes that the Department would already have collected from the supplier. Whether the tribe labels the relief it seeks as an "exemption" or a "refund," that relief is compensatory and is not allowed under *Ex parte Young. See Papasan*, 478 U.S. at 280–81, 106 S. Ct. at 2942 ("We discern no substantive difference between not-yet-extinguished liability for a past breach of trust and the continuing obligation to meet trust responsibilities asserted by the petitioners. In both cases, the trustee is required, because of the past loss of the trust corpus, to use its own resources to take the place of the corpus or the lost income from the corpus."); *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426 (1985) ("But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.").

To be sure, some prospective relief against individual officers allowed by *Ex parte Young* may cost states money, but we must ask whether the expenditure of state funds is a necessary result of compliance with an injunction or a declaratory judgment or whether the expenditure is instead the "goal in itself." *Lucky v. Harris*, 860 F.2d 1012, 1014–15 (11th Cir. 1988); *see also Edelman*, 415 U.S. at 667–68,

16

94 S. Ct. at 1358 (permitting prospective injunctive relief with "an *ancillary* effect on the state treasury" (emphasis added)). In *Milliken v. Bradley*, for example, the Supreme Court ruled that a federal court could require a state to institute school programs to eliminate the vestiges of racial segregation even though the establishment of those programs would cost the state money. 433 U.S. 267, 289–90, 97 S. Ct. 2749, 2762 (1977). But the Supreme Court distinguished the relief allowed in *Milliken* from relief involving "individual citizens' conducting a raid on the state treasury for an accrued monetary liability." *Id.* at 290 n.22, 97 S. Ct. at 2762 n.22. Here, the expenditure of state funds is the goal in itself. A raid on the state treasury is precisely what is at stake in this appeal because an exemption from the tax entitles the taxpayer to a refund of the tax. The only relief the Tribe has requested is a declaratory judgment entitling it to a check made out from the Florida fisc whether today or in the future.

Our dissenting colleague also faults us for crafting a "precollection exception" to *Ex parte Young*, but we have not created such an exception. We have instead considered the structure of the Florida tax scheme to determine whether the real, substantial party in interest is the individual officer or the State. Our dissenting colleague cites no authority for his contention that states cannot legislate their way around *Ex parte Young*, and *Ford Motor Company* stands for the opposite proposition. *See Ford Motor Co.*, 323 U.S. at 463, 65 S. Ct. at 350 ("This

section [of the Indiana statute] clearly provides for a[n] action against the state, as opposed to one against the collecting official individually."). For the reasons stated above, Florida is the real, substantial party in interest to this suit because of the manner in which Florida has structured the collection of its fuel tax. The Tribe has never challenged the precollection of the fuel tax; instead, the Tribe has always contended that it should be exempt from the tax and, therefore, entitled to a refund of taxes already paid or taxes to be paid in the future. Such a suit will always be "in essence one for the recovery of money from the state" and is necessarily a suit against the State. *Id.* at 463–64, 65 S. Ct. at 350. And the authorities both our dissenting colleague and the Tribe rely upon do not convince us otherwise; none of those decisions involved a precollected tax that the state would have to refund. In *Agua Caliente Band of Cahuilla Indians v. Hardin*, for example, a tribe sought a declaratory judgment that federal law preempted a sales and use tax imposed on tribal lands and an injunction against state officers from collecting the tax before the tribe paid it. 223 F.3d 1041, 1043–44 (9th Cir. 2000); *see also Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1162–68 (10th Cir. 2012) (involving a challenge to a tobacco tax that required placement of tax stamps on tobacco products and payment of funds into state escrow fund); *Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 569–70 (10th Cir. 2000) (involving a declaratory judgment that federal law preempted the state tax on fuel distributed to retail

18

stations on tribal lands and an injunction barring the collection of the tax); *CSX Transp. Inc.*, 138 F.3d at 542 ("The district court further erred in holding that the injunction was retrospective because it sought a refund or credit . . . [t]he Railroads seek nothing of the kind."). Unlike the tax regimes in those appeals, the only relief available to the Tribe under Florida law is a refund of taxes it will already have paid, and state sovereign immunity bars that relief. *See Ford Motor Co.*, 323 U.S. at 463–64, 65 S. Ct. at 350.

We must also address our dissenting colleague's speculation about the different methods Florida could employ to stop precollecting the tax from the Tribe, which we reject for three reasons. First, we are not free to rewrite the Florida statutes so that the Tribe may circumvent the sovereign immunity of Florida and sue its individual officers. *See Seminole Tribe*, 517 U.S. at 75–76, 116 S. Ct. at 1133. Any future change to the collection of fuel taxes in Florida is a matter of *public policy* to be debated by the Florida legislature, perhaps at the urging of the Tribe, but not a matter of law to be decided by a federal court in a lawsuit filed by the Tribe. Second, our dissenting colleague's hypothetical tax-free fuel rate, coupons, or vouchers are overly broad and impractical. The Tribe alleges that only a portion of the fuel it purchases is exempt from the tax, not all of it. Perhaps the dissent envisions that the fuel supplier would make two separate sales to the Tribe, one sale of taxed fuel and one sale of tax-exempt fuel used for

19

essential government services. His speculation unrealistically assumes that either the Tribe or the fuel supplier would be able to project the amount of tax-exempt fuel the Tribe would use down to a one-hundredth of a gallon. That unrealistic assumption illuminates why a federal court is wholly unsuited to instruct a state legislature about how best to collect fuel taxes. Third and most importantly, the Tribe never asked for such an unworkable form of relief.

Finally, our dissenting colleague frets that the Tribe cannot access a federal court to vindicate its alleged constitutional claim, but he fails to consider that the Tribe has the opportunity to seek review from the Supreme Court of the United States should the Tribe challenge the tax in state court as it has done before. *Compare McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Fla.*, 496 U.S. 18, 27, 110 S. Ct. 2238, 2245 (1990) ("We have repeatedly and without question accepted jurisdiction to review issues of federal law arising in suits brought against States in state court; indeed, we frequently have entertained cases analogous to this one, where a taxpayer who had brought a refund action in state court against the State asked us to reverse an adverse state judicial decision premised upon federal law." (footnote omitted)), *with Reich v. Collins*, 513 U.S. 106, 109–10, 115 S. Ct. 547, 549 (1994) ("[T]he sovereign immunity States enjoy in *federal* court, under the Eleventh Amendment, does generally bar tax refund claims from being brought in that forum."). We see no

20

reason to stretch the bounds of *Ex parte Young* to allow the Tribe to sue the Department and its individual officers in federal court when, after the passage of the Tax Injunction Act, 28 U.S.C. § 1341, non-Indian taxpayers must challenge taxes in state court.

When the Founders "split the atom of sovereignty," *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838, 115 S. Ct. 1842, 1872 (1995) (Kennedy, J., concurring), each state retained the right "not to be amenable to the suit of an individual *without its consent*." The Federalist No. 81, at 487–88 (C. Rossiter ed. 1961) (Hamilton). Florida has not consented to this suit, and we cannot adjudicate whether Florida must grant the Tribe an exemption from the fuel tax or pay the Tribe a refund from its fisc.

## IV. CONCLUSION

We **AFFIRM** the dismissal of the complaint filed by the Seminole Tribe of Florida.

JORDAN, Circuit Judge, concurring in part and dissenting in part:

I join the majority's opinion with respect to the dismissal of Counts III-VI, which expressly seek injunctive relief in the form of refunds to the Tribe of Florida's already-collected fuel taxes, but respectfully dissent from the dismissal of Counts I and II, which seek a declaratory judgment against Florida officials that the future imposition of certain fuel taxes violates the Constitution.

## I

"[S]overeign immunity . . . generally bar[s] tax refund claims from being brought in [federal court]." *Reich v. Collins*, 513 U.S. 106, 110 (1994). Because Counts III-VI of the Tribe's complaint seek "the recovery of money from the [S]tate" through refunds, I concur with the majority that "the [S]tate is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945) (holding that a taxpayer's suit against state treasury officials for "a refund of gross income taxes paid" was an action against the state and barred by the Eleventh Amendment). *See also DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 691 (11th Cir. 1997) ("[I]t is obvious that this is, in reality, a suit against the State itself. The only action the defendants are required to take to comply with the district court's injunction is to pay from the state treasury the additional funds specified by the district court.").

22

I do not, however, agree that the Eleventh Amendment bars Counts I and II as against the Department of Revenue's interim executive director and deputy executive director under *Ex parte Young*, 209 U.S. 123 (1908).  Significantly, Counts I and II do not ask for refunds, but rather seek only a declaration that fuel purchased by the Tribe for use on tribal land or in the provision of essential governmental services is exempt from the fuel tax under the Indian Commerce Clause, U.S. Const. Art. I, § 8, cl. 3.  Such relief, in my opinion, is permitted under *Ex parte Young*, which generally allows suits for declaratory and prospective relief against state officials in charge of administering or enforcing unconstitutional laws. *See Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011).[1]

## A

Though it may be an "expedient 'fiction,'" *Ex parte Young* is "necessary to ensure the supremacy of federal law."  *Cent. Va. Cmty. College v. Katz*, 546 U.S. 356, 378 n.14 (2006) (citation omitted).   Accordingly, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

---

[1] The Florida officials who have been sued here are proper defendants under *Ex parte Young*, as they, "by virtue of [their] offices, ha[ve] some connection with the unconstitutional act or conduct complained of." *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (internal quotation marks and citation omitted) (second alteration in original).  They are, in the words of *Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003), "responsible for" the enforcement of the fuel tax.

prospective.'"  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted and alteration in original).

Counts I and II satisfy this straightforward inquiry.  They allege an ongoing violation of federal law, i.e., that Florida's fuel tax violates (and will continue to violate) the Indian Commerce Clause as applied to fuel purchased by the Tribe for use on tribal land or in the provision of essential governmental services.  *See* Complaint, D.E. 1 at ¶¶ 30, 37.  And they seek, at least in part, a declaration that fuel which has yet to be purchased or taxed is not subject to the tax when it is used by the Tribe on tribal land or in the provision of essential governmental services. *See id.* at ¶¶ 33, 38.  Such "relief [is] properly characterized as prospective." *Verizon Md.*, 535 U.S. at 645 (internal quotation marks omitted).

The majority relies heavily on *Ford Motor Co.*, but that case is easily distinguishable.  First, the taxpayer there expressly sought a "refund of gross income taxes paid."  323 U.S. at 460.  Second, the taxpayer sued under a state statute which provided for an action against the state itself.  *See id.* at 462-63. Here, as noted earlier, Counts I and II seek only a declaratory judgment that the future imposition and collection of Florida's fuel tax would be unconstitutional, and, in Counts I and II, the Tribe sued the interim executive director and deputy executive director pursuant to *Ex parte Young*.

As the Supreme Court and various circuits have recognized, the Eleventh Amendment does not bar prospective challenges to allegedly unconstitutional state taxes when such suits are "brought against state officers in their official capacity and not against the State in its own name." *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 785 & n.3 (1991) ("Absent [the Tax Injunction Act], state taxes could constitutionally be enjoined."). *See also Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1168 (10th Cir. 2012) (holding that the Eleventh Amendment did not bar claims for prospective declaratory and injunctive relief in a suit challenging Oklahoma statutes that taxed and regulated the sale of cigarettes and other tobacco products); *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1049 (9th Cir. 2000) (holding that the Eleventh Amendment did not bar an Indian tribe from seeking a declaratory judgment precluding the imposition of California's sales and use tax on purchases of food and beverages by non-tribal members at a tribal resort on reservation land); *CSX Transp., Inc. v. Bd. of Pub. Works of the State of W. Va.*, 138 F.3d 537, 541 (4th Cir. 1998) ("An injunction against the future collection of illegal taxes, even those that already have been assessed, is prospective, and therefore available under the *Ex parte Young* doctrine."). The only distinction here is that Florida precollects its fuel tax from suppliers for mere "administrative convenience," Fla. Stat. § 206.41(4)(a), but that is a distinction without a difference, and the majority's opinion therefore creates a circuit split.

25

Florida's choice to precollect the challenged fuel tax now and in the future does not somehow transform the Tribe's requested declaratory relief from permissibly prospective to impermissibly retrospective. Retrospective relief is backward-looking, and seeks to remedy harm "resulting from a *past* breach of a legal duty on the part of the defendant state officials." *Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (emphasis added). To illustrate, the Supreme Court held in *Edelman* that a judgment requiring the state to pay wrongfully withheld welfare benefits amounted to a "retroactive award of monetary relief" because it "require[d] payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those whose applications were [incorrectly] processed" before the plaintiffs had filed suit. *Id*. By contrast, the alleged harm here does not arise from the past breach of a legal duty; it results from the future and continuing imposition of an allegedly unconstitutional tax on fuel that has yet to be purchased or taxed. *See, e.g.*, *CSX Transp.*, 138 F.3d at 542 (rejecting argument "that an injunction against the future collection of illegal taxes is retrospective and unavailable merely because the state has already decided how much tax to collect, even though the money is still safely in the taxpayer's pocket").

**B**

Were the Tribe to prevail in its constitutional challenge—a matter on which I do not express any views—the district court would issue a declaratory judgment that the fuel tax could not be applied to future purchases of fuel by the Tribe for use on tribal land and in the provision of essential governmental services.  The majority believes that such a judgment would be tantamount to an order requiring Florida to issue refunds.  But it is difficult to understand, linguistically or otherwise, how asking to stop something that is going to continue indefinitely into the future can be legally characterized as a retrospective demand for payment of money already in the State's treasury.  There are obviously fuel taxes that Florida has not yet precollected, not even from suppliers, and for such unassessed future taxes (say, for example, taxes that will be precollected in May of 2015, a year from now) any declaratory relief necessarily has to be prospective.  How can a taxpayer possibly seek or get a refund—defined as a "sum repaid," 2 Shorter Oxford English Dictionary 2510 (5th ed. 2002), or "[t]he return of money to a person who overpaid," Black's Law Dictionary 1394 (9th ed. 2009)—for a tax that has not yet been paid by anyone?

Likewise, it is impossible to characterize a judgment which declares the future imposition and collection of taxes unconstitutional as an award of damages.  "Traditional money damages are payable to compensate for the harm of *past*

27

conduct, which subsists whether future harm is threatened or not." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 211 n.5 (2000) (Scalia, J., dissenting) (emphasis added). *See also F.T.C. v. Leshin*, 719 F.3d 1227, 1232 (11th Cir. 2013) ("The most common combination of equitable and legal remedies, for instance, is a district court's grant of both an injunction that prevents future harm along with an award of damages that compensates for past harm.").

The Florida officials sued here could choose to abide by any adverse declaratory judgment by providing any form of relief that would cure the unconstitutional application of the fuel tax. *Cf. McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 51 (1990) ("When a State penalizes taxpayers for failure to remit their taxes in a timely fashion, thus requiring them to pay first before obtaining review of the tax's validity, federal due process principles long recognized by our cases require the State's postdeprivation procedure to provide a 'clear and certain remedy[ ]' for the deprivation of tax moneys in an unconstitutional manner.") (citation omitted). For example, the Florida officials could comply with a declaratory judgment by eliminating or modifying, in whole or in part, the procedure for the precollection of fuel taxes with respect to future purchases of fuel by the Tribe; they could require gas stations to charge members of the Tribe a different, tax-exempt price on fuel purchased for use on tribal lands or in the provision of essential governmental

28

services; or they could issue coupons or vouchers—which could later be reconciled—entitling the Tribe to a discount of the purchase price.

If the Florida officials refused to abide by a declaratory judgment and continued enforcing (and collecting) the fuel tax from the Tribe in an unconstitutional manner, the district court could enforce its judgment through contempt proceedings, as happened in *Ex parte Young* itself, *see* 209 U.S. at 159-60 (upholding lower court's order of contempt, which committed a state attorney general to federal custody for violating a federal injunction barring enforcement of state law held to be unconstitutional), or through financial penalties, as explained in *Hutto v. Finney*, 437 U.S. 678, 690 (1978) ("In exercising their prospective powers under *Ex parte Young* and *Edelman* . . . , federal courts are not reduced to issuing injunctions against state officers and hoping for compliance.  Once issued, an injunction may be enforced.  Many of the court's most effective enforcement weapons include financial penalties.") (citations omitted).

Should the State decide not to change its precollection scheme as to future taxes and wish to avoid contempt proceedings or the imposition of financial penalties, then it is likely that the Florida officials would have to issue refunds to the Tribe in order to comply with any declaratory judgment exempting the Tribe from the fuel tax in the future.  But in that scenario the issuance of refunds would be the result of a choice made by Florida, *see Quern v. Jordan*, 440 U.S. 332, 347

(1979), and the existence of an Eleventh Amendment bar does not depend on the mere difficulty (or expense) of compliance with a prospective federal decree. *See Milliken v. Bradley*, 433 U.S. 267, 289 (1977) ("[*Ex parte Young*] permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury.").[2]

## C

The majority's opinion, as I read it, apparently would allow a state to shield the enforcement of any tax, no matter how constitutionally untenable, from challenge in federal court simply by enacting a precollection procedure. But there is no "precollection exception" to *Ex parte Young*, and the supremacy of federal law does not rest on the type of tax scheme that Florida has designed. States cannot legislate their way around *Ex parte Young*, and in other contexts the Supreme Court has made clear that the supremacy of federal law is not dependent on the ingenuity of obstacles created by state law. *See Haywood v. Drown*, 556 U.S. 729, 739 (2009) ("A [state] jurisdictional rule cannot be used as a device to

---

[2] I note, as well, that the Supreme Court has not hesitated to enforce a lower court's mandamus order requiring county auditors and county treasurers, who were employed by the state, to levy a tax to pay a federal judgment even though those officials were not permitted to impose such a tax under state law. *See Graham v. Folson*, 200 U.S. 248, 254-55 (1906) (rejecting argument that the mandamus relief was effectively relief against the state itself). If forcing such officials to impose a tax prohibited by state law is not constitutionally problematic, requiring Florida officials to exempt the Tribe from the fuel tax in the future isn't either. *See also Milliken*, 433 U.S. at 289 (affirming a district court order requiring the state to pay half of a court-ordered desegregation plan even though the *Ex parte Young* defendants were only state enforcement officials).

undermine federal law, no matter how evenhanded it may appear."); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) ("We will find preemption . . . where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'") (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) (second and third alterations in original).

"Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985).  The Tribe's requested declaratory relief in Counts I and II fulfills this function because it seeks to "ensure that the state [fuel] tax be applied [in the future] by [Florida] officials in a manner consistent with federal law." *Agua Caliente*, 223 F.3d at 1049.  As a result, I do not believe that Counts I and II are barred by the Eleventh Amendment.

## II

Because the majority affirms across the board on Eleventh Amendment grounds, it does not reach the Tribe's arguments that the district court erred in dismissing the complaint under the Tax Injunction Act (TIA), 28 U.S.C. § 1341, and the *Rooker-Feldman* doctrine, based on *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462

(1983).  Because I would allow Counts I and II to proceed under *Ex parte Young,* I write to briefly explain why neither of these other jurisdictional barriers applies.

Although the TIA generally prohibits federal courts from "enjoin[ing], suspend[ing] or restrain[ing] the . . . collection of any tax under State law," 28 U.S.C. § 1341, it does not apply to Indian tribes "seeking to enjoin the enforcement of a state tax law" in a suit brought under 28 U.S.C. § 1362.  *See Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 474-75 (1976).  *See also Blatchford*, 501 U.S. at 785 (explaining that "*Moe* held § 1362 to eliminate [the TIA's] application to tribal suits").  The district court's contrary conclusion, based on its determination that "the applicability of the TIA in this case hinges on the locus of the fuel tax," D.E. 27 at 9, in my view conflates the merits of the Tribe's claims with the jurisdictional inquiry demanded by the intersection of the TIA and § 1362.  Whether (or not) the TIA applies does not depend on whether the Tribe will succeed on its claims.  I would therefore reverse the district court's dismissal of the Tribe's claims under the TIA.

I would also set aside the district court's dismissal of the Tribe's claims under the *Rooker-Feldman* doctrine.  "The *Rooker-Feldman* doctrine is . . . confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil*

32

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  *See also Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1330 (11th Cir. 2010) ("The doctrine bars the losing party in state court 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'") (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).  It "does not otherwise override or supplant preclusion doctrine." *Exxon Mobil*, 544 U.S. at 284.  *See also Bates v. Harvey*, 518 F.3d 1233, 1240 (11th Cir. 2008) ("The *Rooker-Feldman* doctrine is distinct from issue preclusion. . . .").

The district court dismissed the Tribe's claims because the Fourth District, in *Florida Department of Revenue v. Seminole Tribe of Florida*, 65 So. 3d 1094 (Fla. 4th DCA 2011) ("*Seminole Tribe I*"), had "addressed precisely the same issues contained in the claims in the instant suit."  D.E. 27 at 6.  In so ruling, the district court "expanded *Rooker-Feldman's* jurisdictional bar to include federal actions that simply raise claims previously litigated in state court." *Exxon Mobil*, 544 U.S. at 287 n.2.  *See also id.* at 293 (*Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court").

## III

In our constitutional scheme, sovereign immunity "works only because of the exceptions to it," and the "most important of these" is "the suit against an officer" under *Ex parte Young*. John T. Noonan, Narrowing the Nation's Power: The Supreme Court Sides with the States 85 (2002). The Eleventh Amendment, in my mind, does not bar Counts I and II of the Tribe's complaint under *Ex parte Young*. I would therefore set aside the dismissal of these Counts, and remand for the district court to determine whether the Fourth District's judgment in *Seminole Tribe I* is entitled to preclusive effect under Florida law, and/or whether Counts I and II should be dismissed for failure to state a claim. *See* Appellees' Br. at 17-22, 33-39.