**FIRST DIVISION**
**BARNES, P. J.,**
**MILLER, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2017**

# In the Court of Appeals of Georgia

A17A0295. COWARD et al. v. MCG HEALTH, INC.

MILLER, Presiding Judge.

Catherine Coward and Mary Bargeron (collectively "Plaintiffs") sued MCG Health, Inc., alleging that MCG Health terminated their employment in violation of Georgia's Whistleblower Statute, OCGA § 45-1-4. The trial court granted summary judgment to MCG Health, and Plaintiffs now appeal, contending, inter alia, that they each established a prima facie case of retaliation under OCGA § 45-1-4; that MCG Health's true reasons for terminating their employment were discriminatory; and that the reasons articulated by MCG Health for their termination were pretextual.[1] After

---

[1] The trial court concluded that the Plaintiffs failed to establish a prima facie case of retaliation. Consequently, the trial court did not reach the issues of whether MCG Health's true reasons for terminating Plaintiffs' employment were discriminatory or whether its stated reasons for doing so were pretextual.

a thorough review of the record, we conclude that the Plaintiffs failed to show this Court that their complaints triggered the protections afforded by the Georgia Whistleblower Statute. Therefore, neither Coward nor Bargeron established that she engaged in a protected activity for purposes of establishing a prima facie case under OCGA § 45-1-4, and we must affirm the grant of summary judgment to MCG Health.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and footnote omitted.) *Caldon v. Bd. of Regents of the Univ. System of Ga.*, 311 Ga. App. 155 (715 SE2d 487) (2011); see also *Tuohy v. City of Atlanta*, 331 Ga. App. 846 (771 SE2d 501) (2015).

So viewed, the record shows that Plaintiffs are registered nurses. Coward began working for MCG Health in 2001 and was trained as a charge nurse.[2] Bargeron began working for MCG Health in 2004 as a Senior Staff R.N. and also worked as a charge

---

[2] According to the Merriam-Webster Dictionary, a charge nurse is a nurse who is in charge of one section of a hospital. https://www.merriam-webster.com/dictionary/charge nurse.

nurse. Initially, Plaintiffs were assigned to the child and adolescent psychiatric unit, and they occasionally worked in the adult psychiatric unit (hereinafter the "Adult Unit").

In August 2009, Plaintiffs were reassigned to work in the Adult Unit on a regular basis. On September 11, 2009, Coward was assigned to work as the charge nurse for the 3:00 p. m. to 11:00 p. m. shift in the Adult Unit. Although Coward had been the charge nurse in the Adult Unit before, including the prior day, she asked another nurse to take her place as charge nurse for that shift. Coward did not report the change in assignments to any manager at MCG Health or to the unit clerk who provided administrative support for the Adult Unit. This was the first time Coward had changed her charge nurse assignment since her transfer to the Adult Unit.

On the evening of September 15, 2009, Coward was working in the Adult Unit when a patient in that ward attempted suicide. Coward's supervisor came in that night and took statements from the staff, including Coward. Coward told her supervisor that she believed that the attempted suicide resulted from short-staffing in the Adult Unit. One week later, MCG Health terminated Coward's employment for refusing to perform her assigned duties as charge nurse on September 11, 2009.

3

On May 31, 2010, Bargeron was assigned to work as the charge nurse in the Adult Unit. The unit was busy, and there was no unit clerk when Bargeron arrived for her shift at 3:00 p. m. Bargeron twice called her manager to report that the unit was understaffed, and Bargeron's manager told her both times to obtain the necessary official status report[3] from the prior shift's charge nurse so as to transition between the two shifts. During the second phone call, Bargeron informed her manager that she had not obtained a status report from the prior shift's charge nurse,[4] and Bargeron refused to go forward with her staffing assignment. The supervisor instructed Bargeron to go home, and, a few days later, MCG Health terminated Bargeron's employment for refusing her May 31 assigned shift.

Plaintiffs subsequently filed suit against MCG Health, alleging that it retaliated against them for speaking out about the understaffing and terminated their

[3] Bargeron testified in her deposition that obtaining the status report involved meeting with the staff already in the Adult Unit regarding how many patients were in the unit, what is going on with each patient, including each patient's level of care, and whether they were expecting any new admissions.

[4] Bargeron testified that she got a general "report" based on her own assessment of the unit and the "little bit" of information she was told by the prior shift's charge nurse. Bargeron admitted, however, that she told her supervisor that she never obtained a status report from the prior shift's charge nurse, and she admitted that she never got an official status report.

employment in violation of OCGA § 45-1-4 (hereinafter the "Whistleblower Statute").[5] Following discovery in this case, MCG Health moved for summary judgment, arguing that Plaintiffs failed to establish a prima facie case of retaliation. MCG Health further argued that it had legitimate, non-discriminatory reasons for terminating Plaintiffs' employment and that Plaintiffs could not show that the reasons for their termination were pretexual. The trial court granted summary judgment to MCG Health, and this appeal ensued.

1. On appeal, Plaintiffs contend that the trial court erred in granting summary judgment to MCG Health. We disagree.

The Whistleblower Statute, OCGA § 45-1-4,

> prohibits public employers from (1) retaliating against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency; or (2) retaliating against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

---

[5] Both Coward and Bargeron availed themselves of the internal grievance process to appeal their terminations, which were upheld.

5

(Punctuation and footnotes omitted.) *Caldon*, supra, 311 Ga. App. at 158. Our appellate courts have repeatedly explained that

> [i]n construing a statute, this [C]ourt applies fundamental rules of statutory construction [that] require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to look diligently for the intention of the General Assembly. Where the plain language of a statute is clear and susceptible of only one reasonable construction, we must construe the statute according to its terms.

(Citation omitted.) *Lue v. Eady*, 297 Ga. 321, 332 (3) (b) (773 SE2d 679) (2015).

In the context of evaluating whether a state whistleblower claim is subject to summary adjudication, this Court utilizes the *McDonnell Douglas* burden-shifting analysis used in Title VII retaliation cases. *Tuohy*, supra, 331 Ga. App. at 848-849 (1); see *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 802-806 (93 SCt 1817, 36 LE2d 668) (1973).

> Under the *McDonnell Douglas* framework, the plaintiff must first make a prima facie case of retaliation. If the plaintiff makes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. If the employer successfully meets this burden of production, then the burden shifts back to the plaintiff to show that each proffered reason was pretext.

6

(Citations omitted.) *Tuohy*, supra, 331 Ga. App. at 849-850 (1).

On appeal, Plaintiffs specifically argue that they satisfied the prima facie case because (i) MCG Health was a public employer; (ii) they engaged in protected activities when they complained about staffing issues; and (iii) they were terminated as a result of their conduct.

> To establish a prima facie case of retaliation under the Whistleblower Statute,
>
> a public employee must demonstrate that (1) [she] was employed by a public employer; (2) [she] made a protected disclosure or objection; (3) [she] suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action.

(Footnote omitted). *Albers v. Ga. Bd. of Regents of the Univ. System of Ga.*, 330 Ga. App. 58, 61 (1) (766 SE2d 520) (2014); see also *Forrester v. Ga. Dept. of Human Svcs.*, 308 Ga. App. 716, 722 (1) (a) (708 SE2d 660) (2011) (physical precedent only).

Addressing the second prong of the prima facie case,[6] the plain language of the Whistleblower Statute required Coward and Bargeron to show that they either

---

[6] Because we conclude that Plaintiffs did not engage in protected activity, we need not decide whether MCG Health is a "public employer" under the Whistleblower Statute and we express no opinion on this apparently open question.

(1) disclosed a violation of or noncompliance with a law, rule, or regulation to a supervisor[7] or (2) objected to or refused to participate in an activity, policy, or practice that they reasonably believed to be in violation of or noncompliance with a law, rule, or regulation. See OCGA § 45-1-4 (d) (2), (3). Under the Whistleblower Statute, a law, rule, or regulation "includes any federal, state, or local statute or ordinance or any rule or regulation adopted according to any federal, state, or local statute or ordinance." OCGA § 45-1-4 (a) (2).

(a) *Whether Coward made a protected disclosure or objection.*

Coward complained to her supervisor that the Adult Unit was short-staffed after a patient attempted suicide, which Coward attributed to an insufficient nurse-to-patient ratio. Coward also told her supervisor that she thought that short-staffing was affecting patient care and was a "chronic problem." In making these complaints, Coward identified only internal operating procedures for staffing requirements as the basis for her concerns. Indeed, she admitted in her deposition that she never identified to her supervisor that the understaffing violated any law, rule, or regulation. Complaints arising under internal policies are not, however, the type of protected

---

[7] It is undisputed that neither Coward nor Bargeron made any disclosures to an outside government agency. See OCGA § 45-1-4 (a) (1), (d) (2).

8

activity the Whistleblower Statute was intended to protect. *Edmonds v. Bd. of Regents of the Univ. System of Ga.*, 302 Ga. App. 1, 6-7 (1) (689 SE2d 352) (2009) (a safety concern arising under an internal policy is not a law, rule, or regulation under the statute), disapproved in part on other grounds, *Wolfe v. Bd. of Regents of the Univ. System of Ga.*, 300 Ga.223, 232 (2) (d), n. 5 (794 SE2d 85) (2016).

Construed in Coward's favor, her own testimony, and the record as a whole, show that, prior to her termination, Coward failed to engage in any activity that would have triggered protection under the Whistleblower Statute. Moreover, no evidence showed that she objected to or refused to participate in an activity, policy, or practice that she reasonably believed to be in violation of, or in noncompliance with, a law, rule, or regulation. Regardless of whether these apparently serious concerns may have been justified by the lack of sufficient nursing support for MCG Health's patients, Coward did not alleged that MCG Health violated a law, rule, or regulation until she filed her response to MCG Health's motion for summary judgment.

In reaching this conclusion, we need not determine what terminology is required to trigger the protections of the Whistleblower Statute, nor do we believe that the statute requires specific magic words. All we conclude is that Coward's pre-termination statements to her supervisors about staffing that was inconsistent with the

9

hospital's internal policy, without any allegation that this understaffing violated a law, rule, or regulation, is insufficient.

Thus, even assuming without deciding that Coward met the other required elements of a prima facie case, she failed to show that she made a protected disclosure or objection and, therefore, she failed to establish a prima facie case of retaliation under the Whistleblower Statute. See OCGA § 45-1-4 (d) (2), (3); *Edmonds*, supra, 302 Ga. App. at 6-7 (1).

(b) *Whether Bargeron made a protected disclosure*.

Construed in Bargeron's favor, the record shows that she also complained to her supervisor only that patient care was lacking because the hospital was short-staffed and not that MCG Health engaged in any unlawful activity. Consequently, for the reasons set forth above, Bargeron, like Coward, did not disclose a violation or failure to comply with any law, rule, or regulation prior to her termination. See *Braithwaite v. Fulton-DeKalb Hosp. Auth.*, 317 Ga. App. 111, 115 (2) (729 SE2d 625) (2012).

(c) *Whether Bargeron objected to or refused to participate in an activity, policy or practice which she reasonably believed to be in violation of or noncompliance with a law, rule, or regulation*.

10

Our analysis of Bargeron's claim does not end here, however, because she was terminated for refusing her assigned shift as charge nurse in the Adult Unit, and she testified that she refused her shift due to concerns about understaffing. Bargeron's concerns were based on internal hospital staffing standards and the needs of the specific patients in the unit at that time. No matter how well-founded, we are constrained to find that Bargeron's general safety concerns regarding understaffing in the unit based on the hospital's internal operating procedures do not qualify as protected activity under the plain language of the statute. See OCGA § 45-1-4 (d) (3); *Edmonds*, supra, 302 Ga. App. at 6-7 (1). Compare *Albers*, supra, 330 Ga. App. at 62 (1) (a) (factual question remained regarding whether university police chief engaged in protected whistleblowing activity where he reasonably believed that the university administration had obstructed justice in violation of the law by interfering with a criminal investigation). Consequently, Bargeron also failed to establish that she objected to or refused to participate in an activity, policy, or practice which she reasonably believed to be in violation of or noncompliance with a law, rule, or regulation so as to qualify for the protections of the Whistleblower Statute. Therefore, she likewise failed to establish a prima facie case of retaliation.

11

Because neither Coward nor Bargeron engaged in any conduct that qualified as protected activity under the Whistleblower Statute, the trial court properly concluded that they failed to satisfy the requirements for a prima facie case of retaliation. In so holding, we recognize the importance of employees raising safety concerns. Nevertheless, and no matter how well-intended, Coward's and Bargeron's conduct did not rise to the level of activity specifically given legal protection under penalty of law by our legislature. See *Edmonds*, supra, 302 Ga. App. at 6-7 (1). Compare *Albers*, supra, 330 Ga. App. at 62 (1) (a). Since the Plaintiffs failed to engage in an activity that would trigger protection under the Whistleblower Statute, the trial court properly granted summary judgment to MCG Health.

2. In light of our conclusion in Division 1 that Plaintiffs failed to establish that they engaged in protected activity, we need not address Plaintiffs' remaining enumerations of error.

*Judgment affirmed. Barnes, P. J., concurs. McMillian, J., concurs in judgment only.*

12

A17A0295. COWARD et al. v. MCG HEALTH, INC.

McMILLIAN, Judge, concurring in judgment only.

While I concur with the result reached by the majority in this case, I do not agree with all that is said. Accordingly, I concur in the judgment only, and as a result, the majority's opinion is not binding precedent. See Court of Appeals Rule 33 (a).