[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11418
_____

D.C. Docket No. 1:15-cv-00102-LAG

SERLESS WEST,

Plaintiff-Appellant,

versus

THE CITY OF ALBANY, GEORGIA,
JOELLEN BROPHY,
THOMAS BERRY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(October 2, 2020)

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Serless West appeals the district court's grant of summary judgment on her claims of race discrimination and retaliation against the City of Albany, JoEllen Brophy, and Thomas Berry. West argues that a genuine issue of material fact exists as to her claims of (1) race discrimination and retaliation in violation of the Equal Protection Clause, brought under 42 U.S.C. § 1983; (2) race discrimination in

violation of 42 U.S.C. § 1981, brought under 42 U.S.C. § 1983; (3) race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*; and (4) retaliation in violation of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d)(2). After consideration and with the benefit of oral argument, we conclude that the district court did not err in granting summary judgment.

## I. BACKGROUND

As this is a review of a summary judgment proceeding, we view the facts in the light most favorable to West as the nonmoving party. *See Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th Cir. 2016).

West is an African American woman who was employed with the City of Albany, Georgia from March 2005 until her termination on November 21, 2014. West initially enjoyed a smooth and gainful tenure within the City Finance Department, receiving positive performance reviews and promotions. But that changed in February 2014, when JoEllen Brophy became the Chief Financial Officer for the City.

As CFO, Brophy repeatedly belittled African American employees. She referred to individual employees as "incompetent" or "incapable." She required West to train less qualified white employees who were paid a higher salary than her.

One such employee was Kayren Tomlinson. Brophy promoted Tomlinson, originally a secretary in the Finance Department, to the position of Grants Manager.

2

Brophy also gave Tomlinson a higher salary than West even though West had more experience and trained her. Brophy also asked West to double-check and correct the work of Tomlinson and two other white employees who also had higher salaries than West.

During a meeting one afternoon, Brophy told West she needed to order herself business cards. West then heard from a coworker that Brophy wanted those cards to list West's title as "Staff Accountant." West emailed Brophy, expressing her discontent with that idea and stating "do you know what a Staff Accountant is? A Staff Accountant is an entry level position." She further wrote "I am really amazed that you would try to belittle me and my work."

West spoke to Brophy about her concerns again a month later. She explained that she was training less qualified white employees for jobs that were higher paying than hers and that she was not receiving advancement opportunities. A few weeks later, Brophy recommended West be terminated.

Brophy stated that she recommended termination because of West's behavior the day before. On that day, West was moving offices and wanted to place her filing cabinet behind her desk. Brophy disagreed with this choice of furniture placement and became irate, chasing West down the hallway. Brophy then ordered West into her office. West requested that a neutral third-party observe the exchange and both the Human Resources Director, Henry Cohen, and West's supervisor, Sandy LeMay,

3

witnessed the meeting. Brophy yelled at West, gesticulating aggressively with her finger. West responded, "you don't put your hand in my face because slavery time is over with. I'm not a slave."

West objected to how Brophy treated her and Cohen suggested West return home for the day and put her concerns in writing. That evening, West sent Cohen an email detailing Brophy's behavior. West stated that Brophy had an attitude and insulted her in front of other employees. She further alleged that several employees were "fed up" with Brophy and "ready to file a complaint because they are tired of being mistreated." Finally, she predicted the department would fall apart if Brophy's attitude did not change, referencing Brophy's grudges against certain employees and saying she would "try to stop me from progressing in the department." The next day, Cohen responded by asking West "who do you think you are?"

The day after Brophy recommended that West be terminated, the Albany Herald published a statement by Brophy that "an employee in the city's Finance office had indeed misinformed [the City Downtown Development Authority Board] about bond funding available to the agency." It further stated "that the oversight had led to the dismissal of the employee responsible." At that time, West was the only Finance Department employee assigned as the liaison to the Authority. But West had never made statements about bond funding capacity—that job fell under Brophy's purview as CFO.

4

West appealed Brophy's termination recommendation and Defendant-Appellee Thomas Berry, the Interim County Manager, held a hearing on the appeal on August 22, 2014. Berry did not force Brophy to reconcile her contradictory statements and ignored West's protestations that she had not been insubordinate. Instead, Berry suspended West, required her to attend behavioral counseling, and transferred her to the Utility Department as a Teller Supervisor.

While with the Utility Department, West discovered that its employees were handling cash in a manner she believed to be improper. Specifically, another Teller Supervisor told West to place her cash till in an unsecure and unlocked location one day while she went to lunch. West's till subsequently came up $100 short and she was given a written reprimand. Around two weeks later, West sent a memorandum to the teller supervisor outlining her concerns regarding the need for appropriate financial controls within the Department. Five days after she sent that memorandum, West was fired.

West then filed a complaint in the Middle District of Georgia alleging race discrimination and retaliation by Brophy, Berry, and the City of Albany. During discovery, West sought to depose the City under Federal Rule of Civil Procedure 30(b)(6) on ten subject matters. The City moved for a protective order regarding two of those subject matters under Federal Rule of Civil Procedure 26. The district court granted that motion as to only one of West's requests: to depose the City regarding

any audits, investigations, analyses of financial procedures, financial protocols, and financial irregularities involving any tellers in the Utility Department.

The defendants then moved for summary judgment on all claims. West filed two 44-page documents in support of her response to that motion: one outlining disputed facts and another providing paragraph-by-paragraph rebuttals to the defendants' list of undisputed facts. In support of their reply brief, the defendants filed an 80-page response to West's statement of disputed facts. The district court rejected both West's 44-page paragraph-by-paragraph rebuttal and the defendants' 80-page response as not contemplated by the local rules and granted the defendants' motion for summary judgment. West then filed a timely notice of appeal.

## II. DISCUSSION

West raises five issues on appeal. She first argues that the district court abused its discretion by (1) partially granting the City of Albany's motion for a protective order limiting the scope of a Rule 30(b)(6) deposition and (2) refusing to consider her response to the defendants' statement of undisputed facts. As to the merits of her claims, she argues that the district court erroneously (1) concluded she did not plead a viable retaliation claim, (2) determined Tomlinson was not a similarly situated comparator and West had not proven a city policy condoning discrimination for purposes of her race discrimination claims, and (3) retained jurisdiction over her

6

state-law whistleblower claim and determined her pre-termination disclosure did not allege a violation of law for purposes of that claim.

West also argues the district court erred by granting Berry and Brophy qualified immunity—an issue the district court never reached. Because we hold summary judgment was appropriate on West's race discrimination and retaliation claims, we need not address whether Berry and Brophy are entitled to qualified immunity on those claims. *See Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014) (stating this Court can affirm the district court "on any ground supported by the record"). We discuss the remaining issues in turn.

### A.  The District Court Did Not Err by Limiting the Scope of West's 30(b)(6) Deposition

We review a district court's discovery rulings for abuse of discretion and will not disturb those rulings unless the district court made clearly erroneous factual findings or applied the wrong legal standard. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). "The district court has wide discretion in determining the scope and effect of discovery," and does not abuse its discretion by limiting the scope of discovery if the parties are given "an opportunity to conduct adequate discovery." *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991).

Under Federal Rule of Civil Procedure 30(b)(6), a party seeking to depose a governmental agency must "describe with reasonable particularity the matters for

7

examination." Those matters, like all discovery, "should be tailored to the issues involved in the particular case." *See Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir. 1992) (citing *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985)). And any information sought during discovery "must be relevant and not overly burdensome to the responding party." *Id.* If the requested discovery would result in "annoyance, embarrassment, oppression, or undue burden or expense," the responding party may move for a protective order under Federal Rule of Civil Procedure 26(c). If the district court decides a protective order is warranted, it has broad discretion in determining the scope of that protection. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required").

West sought 30(b)(6) depositions of the City on ten subjects, and the City moved for a protective order regarding two of those subjects. The district court granted the motion only as to one: West's request for a deposition regarding any audits, investigations, analyses of financial procedures, and financial irregularities involving any tellers in the Utility Department. West sought that information to support her claim that the City violated the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d)(2), by terminating her in retaliation for her disclosing financial irregularities within the Teller Division of the Utility Department.

8

Under the Act, a public employer may not "retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency." O.C.G.A. § 45-1-4(d)(2). West argues that the district court abused its discretion by granting the protective order because her request was tailored to the issue of whether she sufficiently "disclos[ed] a violation of or noncompliance with a law, rule, or regulation." And, if she did, her subsequent termination could be considered retaliatory under the Act.

We cannot say that the district court abused its discretion by concluding that West's request was overbroad, vague, at risk of causing the City undue burden and expense, and of questionable relevance disproportionate to the needs of her case. The Act requires that an employee disclose a suspected legal violation, not prove that the violation actually occurred. *See Forrester v. Georgia Dep't of Hum. Servs.*, 708 S.E.2d 660, 666 (Ga. Ct. App. 2011).The information West requested would not make the fact of her disclosure more or less true; the information would only establish that the conduct she complained of actually occurred. Accordingly, West's discovery request was only tangentially relevant to her claim and we affirm the district court's grant of a partial protective order to the City on that request.

*B. The District Court Did Not Abuse its Discretion in Applying the Local Rules*

We defer to a district court's interpretation of its own rules, reviewing that interpretation only for abuse of discretion. *See Reese v. Herbert*, 527 F.3d 1253,

9

1267 n.22 (11th Cir. 2008). In the Middle District of Georgia, "[t]he respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried." M.D. Ga. L.R. 56. Local Rule 7.4 requires, absent a showing of good cause, that briefs in support of or in response to any motion be limited to twenty pages and reply briefs be limited to ten pages.

Neither of West's 44-page documents in response to the defendants' motion for summary judgment complied with Local Rule 56's concision requirement or Local Rule 7.4's page limit. But the district court accepted the first document, despite its noncompliance, because Local Rule 56 allows for a statement of material facts in response to a motion for summary judgment. The district court rejected the second filing because Rule 56 does not allow for a paragraph-by-paragraph rebuttal in addition to that statement of material facts. The district court also rejected the defendants' rebuttal document for the same reason.

West argues that the district court's rejection of her rebuttal document was "the harshest of penalties" and "an overly aggressive reading of Local Rule 56." But Local Rule 56 explicitly requires one "separate and concise statement of material facts" in response to a motion for summary judgment, not multiple filings exceeding Local Rule 7.4's page limit. And the district court *did* consider West's statement of material facts, which West concedes included all facts she believed to be in dispute.

10

Further, because both parties failed to "succinctly and accurately present the relevant issues," the district court explicitly examined the entire record when ruling on the defendants' motion for summary judgment, not just the statements of fact and briefings. Consequently, the district court did not abuse its discretion by interpreting Local Rule 56 to require that West respond to the defendants' motion for summary judgment with only one succinct statement of material facts.

### C. The Equal Protection Clause Does Not Provide a Cause of Action for Retaliation and West Never Pleaded One Otherwise

In Count I of the complaint, West alleged that "Defendants violated her rights to equal protection by taking adverse and retaliatory employment actions" against her. The defendants then moved for summary judgment, arguing that the Equal Protection Clause does not establish a right to be free from retaliation. West responded by alleging retaliation under Title VII but without amending the complaint to include that claim. The district court granted summary judgment on her Title VII retaliation claim because she did not allege it in her complaint and on her Equal Protection Clause claim because the Equal Protection Clause does not provide a right to be free from retaliation. West argues that the district court erred by not interpreting the complaint to allege retaliation under each of her federal statutory claims.

"We review a district court's grant of summary judgment *de novo*, applying the same legal standards that controlled the district court's decision." *Levinson v.*

11

*Reliance Std. Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001). Section 1981 and Title VII clearly establish a right to be free from retaliation; the Equal Protection Clause does not. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) ("42 U.S.C. § 1981 encompasses claims of retaliation"); *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause."). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996))). And it is well established that this Court will not consider issues asserted for the first time on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (collecting cases).

West raised retaliation only in Count I of her complaint, alleging the defendants' actions violated the Equal Protection Clause. Now, for the first time on appeal, she argues that she alleged retaliation under both Title VII and Section 1981 by incorporating by reference all preceding paragraphs in the complaint for each of her federal statutory claims. Confoundingly, the only provision she now argues she did *not* raise retaliation under is the Equal Protection Clause, the lone provision referenced in Count I of her complaint.

12

We agree with the district court that West asserted only retaliation in violation of the Equal Protection Clause. She has now abandoned that Equal Protection retaliation claim; she cannot pursue a new claim under Title VII or Section 1981 that was not included in her complaint. She has identified no basis to reverse the district court's judgment. Accordingly, we affirm the district court's grant of summary judgment on West's retaliation claim.

### D. West Failed to Identify a Valid Comparator or Plead a Mosaic Theory

The heart of West's complaint in the district court was her race discrimination claims under Title VII and 42 U.S.C. § 1983, in which she alleged that the defendants violated her rights under the Equal Protection Clause and Section 1981. This Court applies the same standards of proof and analytical framework to discrimination claims brought under either statute. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (first quoting *Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1170 (10th Cir. 2008) republished at *Tademy v. Union Pac. Corp.*, 614 F.3d 1132 (10th Cir. 2008); and then citing *Cross v. Alabama*, 49 F.3d 1490, 1507–08 (11th Cir. 1995)). If a party is unable to produce direct evidence of discriminatory intent, she must establish intentional race discrimination through either a "convincing mosaic" of circumstantial evidence or through the *McDonnell Douglas* burden-shifting framework. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 n.6 (11th Cir. 2019) (en banc).

13

West failed to rely on a mosaic theory in her complaint or response to the defendants' motion for summary judgment. We will not entertain that new argument on appeal. Accordingly, we consider only West's arguments regarding the district court's *McDonnell Douglas* analysis.

### 1. Race Discrimination Claims Against Berry and Brophy

Under the *McDonnell Douglas* framework, a party must first establish a "*prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis*, 918 F.3d at 1220–21 (citing *Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997)). To satisfy this fourth requirement, a party must first identify a specific, similarly situated employee, "in court-speak, a 'comparator.'" *Id.* at 1217 (citing *Tex. Dep't of Cmty. Aff.s v. Burdine*, 450 U.S. 248, 258–59 (1981)).

We have recognized that identifying a comparator is often the most difficult part of the *McDonnell Douglas* framework and, therefore, do not require that the comparator be in an identical position to the complaining party. *See id.* at 1226. Rather, the comparator must be "similarly situated in all material respects." *Id.* This standard "will turn not on formal labels, but rather on substantive likenesses," such

14

as whether the two "have engaged in the same basic conduct (or misconduct)," and have a similar "employment or disciplinary history." *Id.* at 1227.

The district court reasoned that West's race discrimination claims failed because, although she established the first three *McDonnell Douglas* requirements, she failed to identify a valid comparator. West argues that her former coworker, Tomlinson, is a valid comparator. The district court held that Tomlinson is not a valid comparator because the two employees' employment and disciplinary histories are qualitatively different.

Although the district court did not have the benefit of our decision in *Lewis* when it analyzed the comparator issue, the district court reached the correct bottom-line conclusion. West identifies some similarities between herself and Tomlinson. West and Tomlinson were both accountants reporting to Brophy. Tomlinson also had a similar run-in with Brophy: on one occasion, Tomlinson got into a heated argument with Brophy, crying and yelling at her for telling Tomlinson to move personnel files. But that is where their similarities end. The two women did not engage in the same basic conduct. West behaved insubordinately toward Brophy on several occasions. In an email about business cards, she accused Brophy of attempting to belittle her. During a meeting with other employees present, she accused Brophy of treating her like a slave. And, after that meeting, she wrote a disrespectful email about Brophy to Cohen.

15

West argues that this Court should ignore those instances because Brophy never explicitly called West "insubordinate" on those occasions. But that fact is irrelevant to the question of whether West and Tomlinson are "similarly situated in all material respects." Because both the quality and quantity of West and Tomlinson's interactions with Brophy differ, they are not. We affirm the district court's grant of summary judgment as to West's race discrimination claims against Berry and Brophy.

### 2. Race Discrimination Claims Against the City

West argues that she presented sufficient evidence to the district court that the City violated her rights under Section 1981 and the Equal Protection Clause by maintaining a policy that constituted deliberate indifference to her right to be free from race discrimination. For a local government entity to be liable under Section 1983, there must have been a constitutional violation, a governmental custom or policy of deliberate indifference, and "the execution of [the] government's policy or custom … [must have] inflict[ed] the injury;" liability will not stand for "an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978); *see also McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

West alleged that the City violated her constitutional rights by maintaining "a pattern and practice of unlawful racial discrimination." But, as explained above,

16

West has failed to establish racial discrimination as a matter of law. Thus, West has not met the first element of her Section 1983 claim against the City: that her constitutional rights were violated. Accordingly, we need not reach the questions of a custom of deliberate indifference or of causation. We affirm the district court's grant of summary judgment on West's Section 1983 claim against the City.

### D. The District Court Properly Disposed of West's Whistleblower Claim

West argues that the district court mishandled her Georgia Whistleblower Act claim in two ways: first, by retaining jurisdiction over it, and second, by concluding that she had failed to disclose a violation of state law. The defendants first respond that retaining supplemental jurisdiction was proper under 28 U.S.C. § 1367(c). Second, the defendants argue that the conduct about which West complained to her supervisor did not constitute a violation of state law. We agree with the defendants.

### 1. The District Court Properly Retained Supplemental Jurisdiction

West filed the complaint in federal district court and asked that court to exercise supplemental jurisdiction over her Georgia Whistleblower Act claim under Section 1367. She does not argue that the district court improperly exercised that jurisdiction; all parties agree that the district court had supplemental jurisdiction over West's state law claim under Section 1367(a). And West never asked the district court to later reject that exercise of jurisdiction. Instead, West argues that the district court erred by retaining that jurisdiction and granting summary judgment on her

17

whistleblower claim rather than sua sponte dismissing the whistleblower claim so that she could bring it again in state court.

The district court's decision to either retain or reject jurisdiction over state law claims under Section 1367(c) is "purely discretionary" and "not a jurisdictional matter." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009) (collecting cases) (quoting 16 J. Moore et al., Moore's Federal Practice § 106.05[4], p. 106–27 (3d ed. 2009)). As such, we review a district court's decision to exercise supplemental jurisdiction for abuse of discretion. *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015). And "[t]he district court cannot abuse its discretion by failing to consider arguments that are not before it." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014). Because West did not raise this issue before the district court, we believe she has waived it. *See id.* (citing *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012)); *cf. Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997); *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996); *Myers v. Cnty. of Lake, Ind.*, 30 F.3d 847, 850 (7th Cir. 1994).

But even if West has not waived this argument, "a district court does not abuse its discretion when it has a range of choices and the court's choice does not constitute a clear error of judgment." *Est. of Amergi ex. rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1365 (11th Cir. 2010) (cleaned up). Section 1367(a) allows federal courts

18

with original jurisdiction over a claim to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Under Section 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." The district court may likewise decline to exercise supplemental jurisdiction under Section 1367(c)(4) "in exceptional circumstances" when "there are other compelling reasons for declining jurisdiction."

West does not identify which provision of Section 1367(c) she believes compelled the district court to reject supplemental jurisdiction over her whistleblower claim. Because the whistleblower claim does not raise a "novel or complex issue of State law" or "substantially predominate[] over the claim or claims over which the district court has original jurisdiction," (c)(1) and (c)(2) do not apply. Accordingly, we analyze whether the district court abused its discretion under (c)(3) and (c)(4).

When a district court has discretion under Section 1367(c) to either retain or reject supplemental jurisdiction, it should consider the factors the Supreme Court announced in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966): judicial economy, convenience, fairness, and comity. *See Ameritox*, 803 F.3d at 537;

19

*see also Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) ("while supplemental jurisdiction *must* be exercised in the absence of any of the four factors of section 1367(c), when one or more of these factors is present, the additional *Gibbs* considerations may, by their presence or absence, influence the court in its decision"). All four *Gibbs* factors weigh in favor of the district court retaining jurisdiction. West requested that the district court exercise supplemental jurisdiction over her state law claim. At the time of the summary judgment, the case had been pending in district court for nearly five years and both parties had briefed responses to the relatively simple question of state law: whether West disclosed a violation of state law, rule, or regulation as defined by the Act. Because judicial economy, convenience, fairness, and comity all weighed in favor of the district court retaining jurisdiction over West's whistleblower claim, it did not abuse its discretion by doing so.

2.  West Did Not Disclose a Violation of State Law, Rule, or Regulation

A party establishes a prima facie case under the Georgia Whistleblower Act by showing that (1) she works for a public employer; (2) she disclosed a violation of, or noncompliance with, a law, rule, or regulation to a supervisor or agency; (3) she experienced an adverse employment action; and (4) there is a causal relationship between that disclosure and the adverse employment action. *Lamar v. Clayton Cnty. Sch. Dist.*, 605 F. App'x 804, 806 (11th Cir. 2015) (citing *Forrester v. Ga. Dep't of*

20

*Hum. Servs.*, 708 S.E.2d 660, 665 (Ga. Ct. App. 2011)). It is undisputed that West worked for a public employer. West argues that she satisfied the second element by disclosing inadequate cash-control protocols to her supervisor. But she never contends that those protocols violate any law, rule, or regulation.

Georgia courts have dismissed whistleblower claims in similar factual scenarios. *See Coward v. MCG Health, Inc.*, 802 S.E.2d 396, 400 (Ga. Ct. App. 2017); *Edmonds v. Bd. of Regents of the Univ. System of Ga.*, 689 S.E.2d 352, 357 (Ga. Ct. App. 2009), *disapproved in part on other grounds*, *Wolfe v. Bd. of Regents of the Univ. System of Ga.*, 794 S.E.2d 85 (Ga. 2016). In *Coward*, two nurses alleged that they were terminated as retaliation for speaking out against understaffing. 802 S.E.2d at 318. But the court held that one of the plaintiff's complaints "identified only internal operating procedures . . . as the basis for her concerns," not a violation of "any law, rule, or regulation." *Id.* at 400. Thus, her complaints were not "the type of protected activity the Whistleblower Statute was intended to protect." *Id.* at 400. Similarly, here West complained to her supervisor about lax internal cash-control protocols. Those protocols, or any violation of those protocols, did not constitute a violation of any law, rule, or regulation. And West did not allege otherwise.

Accordingly, summary judgment was appropriate. We affirm the district court's grant of summary judgment on West's whistleblower claim.

## III. CONCLUSION

The district court did not abuse its discretion by partially granting the City's motion for a protective order or refusing to consider West's rebuttal to the defendants' statement of undisputed facts. It did not err by concluding that West did not plead viable retaliation or race discrimination claims. And it properly retained jurisdiction over and granted summary judgment on her Georgia Whistleblower Act claim. Accordingly, the district court is **AFFIRMED**.