[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12785

_____

D. C. Docket No. 3:08-cv-00003-MCR-EMT

LESLIE SMITH,

Plaintiff-Appellant,

versus

PSYCHIATRIC SOLUTIONS, INC.,
PREMIER BEHAVIORAL SOLUTIONS, INC.,
GULF COAST TREATMENT CENTER INC.,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 6, 2014)

Before TJOFLAT, COX, and ALARCÓN,[*] Circuit Judges.

_____

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

ALARCÓN, Circuit Judge:

This appeal concerns a fee dispute that arose between the parties after the underlying case was resolved on the merits. Leslie Smith, a former employee of Gulf Coast Treatment Center, brought a retaliatory-discharge action against Gulf Coast and its parent companies, alleging violations of both the Sarbanes–Oxley Act of 2002 and the Florida Whistle-Blower Act. The district court dismissed Smith's claims at summary judgment, and this Court affirmed.

Several motions for attorneys' fees and sanctions followed. When the dust settled, the district court had awarded the appellees nearly $54,000 in attorneys' fees under the Florida Whistle-Blower Act and over $5,000 for the costs they incurred opposing Smith's unsuccessful motion for sanctions. The district court also denied Smith leave to seek sanctions under 28 U.S.C § 1927. Smith now appeals these fee awards and the denial of her motion for leave to seek sanctions. We affirm.

## I

For approximately four months in 2006, Leslie Smith worked as a mental-health counselor at Gulf Coast Youth Academy, a court-ordered residential-treatment program for delinquent youths that is owned and operated by Gulf Coast Treatment Center. Gulf Coast Treatment Center is owned by Premier Behavioral

2

Solutions, which, in turn, is a subsidiary of Psychiatric Solutions, Inc., a publicly traded corporation. All three companies are party to this appeal, and we refer to them collectively as "Appellees."

Smith alleges that during her tenure at Gulf Coast Youth Academy, she uncovered instances of child abuse and evidence of Medicaid fraud, falsification of medical forms, and several reporting violations. She maintains that she reported all of this to the facility's management and was fired as a result.

Smith subsequently brought a retaliatory-discharge action against the Appellees in state court, alleging that her termination violated the Florida Whistle-Blower Act (the "FWA") and the Sarbanes–Oxley Act of 2002 ("Sarbanes Oxley"). Appellees removed the case to federal court, and an extended and highly contentious period of discovery ensued. Appellees then moved for summary judgment, which the district court granted. As is relevant here, the district court concluded that Smith could not establish a prima facie FWA claim because she had offered no admissible evidence of the alleged abuses and no evidence that the remaining conduct she complained of would be covered under the state statute.[1]

---

[1] The district court's reasoning in granting summary judgment in Appellees' favor on Smith's Sarbanes–Oxley claim is not relevant to this appeal.

3

Smith appealed the district court's summary-judgment order, and this Court affirmed. *Smith v. Psychiatric Solutions, Inc.*, 358 F. App'x 76 (11th Cir. 2009).

After the district court entered summary judgment, Appellees moved for attorneys' fees under the FWA. The district court referred the matter to the magistrate judge. While Appellees' motion was pending, Smith filed two motions of her own: first, she moved for leave to file a § 1927 sanctions motion, and second, she moved separately for sanctions under Rule 11 of the Federal Rules of Civil Procedure. The magistrate judge denied Smith's motion for leave to seek § 1927 sanctions because she filed it nearly 21 months after the deadline for fee motions had passed. The magistrate judge issued a report and recommendation on the remaining motions. She recommended that Smith's Rule 11 motion be denied and that Appellees be awarded attorneys' fees for the expenses they incurred in opposing the motion. The magistrate judge also recommended the district court grant Appellees' motion for attorneys' fees under the FWA.

The district court adopted the magistrate judge's report and recommendation. It directed Smith to pay Appellees $53,925.98 in attorneys' fees under the FWA and ordered Smith's counsel to pay Appellees $5,338.20 in attorneys' fees in connection with Smith's failed motion for Rule 11 sanctions.

4

## II

Smith contends the district court erred in awarding Appellees attorneys' fees for the costs they incurred in defending against Smith's FWA claim. She argues the FWA's fee provision conflicts with Sarbanes–Oxley's fee provision and is therefore preempted. She further contends that fees are improper under the FWA, regardless of whether the statute is preempted by Sarbanes–Oxley.

## A

Both Sarbanes–Oxley and the FWA prevent employers from retaliating against employees who report allegations of specified corporate wrongdoing. *See* 18 U.S.C. § 1514A (preventing publicly traded companies from discharging employees who report an employer's alleged violation of federal securities law); Fla. Stat. § 448.102 (prohibiting employers from taking retaliatory action against employees who have disclosed, threatened to disclosed, or refused to participate in an employer's illegal conduct). Not surprisingly, some legal and factual overlap often exists between claims brought under the two statutes. So it is here: some of the work performed by Appellees' counsel was relevant to developing defenses to both Smith's Sarbanes–Oxley claim and her FWA claim. The question we must answer is whether Appellees may recover attorneys' fees for this work. Sarbanes–Oxley does not authorize a court to award fees to a prevailing defendant.

5

*See* 18 U.S.C. § 1514A(c)(1). The FWA does. Fla. Stat. § 448.104. Smith argues that this demonstrates a conflict between the two statutes, such that Sarbanes–Oxley's fee regime preempts the FWA's.

"[I]t has long been settled that state laws that conflict with federal law are without effect." *Mut. Pharm. Co., Inc. v. Bartlett*, 133 S. Ct. 2466, 2473 (2013) (internal quotation marks omitted). "Such a conflict occurs when compliance with both federal and state regulations is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillman v. Maretta*, 133 S. Ct. 1943, 1950 (2013) (citations and internal quotation marks omitted).

Nothing on the face of either statute prevents compliance with the other. Sarbanes–Oxley's fee provision states that "[a]n employee prevailing in any action under [the statute] shall be entitled to all relief necessary to make the employee whole," including "reasonable attorney fees." 18 U.S.C. § 1514A(c)(1)–(2). The statute is silent as to whether similar relief is available for employers who successfully defend against an employee's Sarbanes–Oxley claim. We see no reason to construe this statutory silence as an implicit prohibition against awarding attorneys' fees to employers. Sarbanes–Oxley's fee provision requires courts to award fees to prevailing plaintiffs; it does not bar a defendant from recovering

6

attorneys' fees that are authorized elsewhere. *See Chang v. Chen*, 95 F.3d 27, 28 (9th Cir. 1996) ("[T]his provision [of the Racketeer Influenced and Corrupt Organizations Act] permits only prevailing plaintiffs to recover attorneys' fees. Courts, however, have never construed this provision as precluding a prevailing defendant from recovering attorneys' fees when authorized elsewhere."); *O'Ferral v. Trebol Motors Corp.*, 45 F.3d 561, 564 (1st Cir.1995) (rejecting the argument "that because RICO provides for an award of costs to plaintiffs, 18 U.S.C. § 1964(c), it implicitly bars costs for defendants even if elsewhere authorized").

Accordingly, we are persuaded that when a prevailing defendant–employer has moved for attorneys' fees, Sarbanes–Oxley's fee provision has no application. It neither authorizes a defendant to recover attorneys' fees nor prevents a defendant from recovering fees that are elsewhere authorized. The statute in no way interferes with a court's ability to award a prevailing defendant attorneys' fees under the FWA.

Nor does the FWA's fee provision present an obstacle to accomplishment of Sarbanes–Oxley's purposes and objectives. "To determine whether a state law conflicts with Congress' purposes and objectives, we must first ascertain the nature of the federal interest." *Hillman*, 133 S. Ct. at 1950. "If the purpose of the [federal] act cannot otherwise be accomplished—if its operation within its chosen

7

field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 373 (2000) (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912)).

Congress enacted Sarbanes–Oxley in 2002 to address the faltering confidence in the American economy following a number of high-profile corporate scandals, such as the one at Enron Corporation. *See generally* S. Rep. No. 107-146, at 10–11 (2002) (discussing the aftermath of Enron's collapse and the resulting call for reform).[2] "Of particular concern to Congress was abundant evidence that Enron had succeeded in perpetuating its massive shareholder fraud in large part due to a 'corporate code of silence'; that code, Congress found, 'discouraged employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally.'" *Lawson v. FMR*

---

[2] Sarbanes–Oxley's whistleblower provisions, including the fee-shifting provision at issue in this case, were drafted as part of the Corporate and Criminal Fraud and Accountability Act of 2002, a discrete bill authored by Senators Leahy and Grassley. S. 2010, 107th Cong. (2002). That bill was incorporated into Sarbanes–Oxley as Title VIII and contained the provision that would become 18 U.S.C. § 1514A. Accordingly, in considering Congress's purpose in enacting Sarbanes–Oxley's whistleblower provisions, we must look to the legislative history of the Corporate and Criminal Fraud and Accountability Act of 2002. *See* 148 Cong. Rec. S7418 (2002) (daily ed. July 26, 2002) (statement of Sen. Patrick Leahy) (acknowledging the Senate's unanimous consent that the analysis of Senate Bill 2010 be included as part of the official legislative history of Sarbanes–Oxley).

*LLC*, 134 S. Ct. 1158, 1162 (2014) (alterations omitted) (quoting S. Rep. No. 107-146, at 2 (2002)). To address this concern, Congress included in Sarbanes–Oxley certain whistleblower provisions "to encourage and protect those who report fraudulent activity that damages investors in publicly traded companies." 148 Cong. Rec. 2948 (2002) (statement of Sen. Patrick Leahy). These provisions prohibit publicly traded companies from retaliating against whistleblowing employees and provide a civil cause of action against employers that do so. 18 U.S.C. § 1514A(b). They also require that employees who prevail in an retaliatory-discharge action under the statute receive compensatory damages, including reasonable attorneys' fees. *Id.* at § 1514A(c).

The FWA does not interfere with Sarbanes–Oxley's regulatory scheme. Like Sarbanes–Oxley, the FWA also protects employees who report their employers' illegal conduct. *See* Fla. Stat. 448.102 (prohibiting retaliatory-personnel action against whistleblowing employees). In this way, the FWA acts as a corollary to Sarbanes–Oxley and supports the federal objective by further incentivizing employees to blow the whistle on corporate wrongdoing. And while the FWA authorizes courts to award fees to prevailing employers, this alone does not frustrate the federal objectives underlying Sarbanes–Oxley. Fee awards under the FWA are discretionary, so judges need not award prevailing defendants fees if

9

they determine doing so might deter employees from bringing meritorious whistleblower actions in the future. Further, aggrieved employees can themselves eliminate the risk they may be held liable for a prevailing defendant–employer's attorneys' fees by foregoing an FWA claim and alleging only a Sarbanes–Oxley claim.

In sum, the FWA neither prevents compliance with Sarbanes–Oxley's fee provision nor frustrates Congress's purposes and objectives in enacting Sarbanes–Oxley. Accordingly, we conclude that Sarbanes–Oxley's fee provision does not preempt the FWA's.

**B**

We turn next to the question whether Appellees' fee award was proper under the FWA. The statute provides a court with the discretion to award attorneys' fees to the prevailing party. Fla. Stat. § 448.104. This Court reviews the district court's decision only to ensure that it did not abuse its discretion. *United States v. Gilbert*, 198 F.3d 1293, 1298 (11th Cir. 1999). A district court abuses its discretion by applying an incorrect legal standard, following improper procedures, or basing its award on clearly erroneous factual findings. *Id.*

Neither the FWA nor its legislative history indicates what, if anything, should guide a court's discretion in awarding fees. Florida courts have considered

10

various criteria but have stopped short of announcing a clear polestar. In *Blanco v. TransAtlantic Bank*, No. 07–20303–CIV, 2009 WL 2762361 (S.D. Fla. Aug. 31, 2009), a federal district court surveyed the Florida caselaw on discretionary fee awards and compiled the various areas of analysis into a five-factor test. *Id.* at *2 & n.4. These factors include the scope of the litigation, whether the plaintiff's claim was meritorious, the possibility that a fee award would frustrate the FWA's purpose by deterring worthy claims, any wealth disparity between the parties, and whether the losing party acted in good or bad faith. *Id.* at *2. The district court below adopted this analysis and concluded that the first three of these factors weighed in Appellees' favor. It awarded them attorneys' fees on that basis.

At the outset, we note that it is not our place to determine what standard should guide trial courts in exercising their discretion to award fees under the FWA. That standard, should it exist at all, is for Florida's legislature or appellate courts to define. Until then, we must entrust lower courts to exercise thoughtfully the broad discretion conferred upon them by the FWA. Trial courts are in a better position than appellate courts to assess whether fees are appropriate in a given case. *Cf. Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (recognizing that appellate micromanagement of fee awards is ill-advised in light of a district court's superior understanding of a litigation). As long as a trial court's decision to award fees

11

reflects a reasoned and thorough analysis based on its superior understanding of the lawsuit, that decision is entitled to deference.

The district court in this case highlighted several aspects of the litigation that it believed warranted sanctions. First, the court determined Smith's FWA claim lacked merit, noting it was dismissed at summary judgment because Smith failed to produce any admissible evidence that would establish a prima facie claim. The district court also observed that Smith's litigation strategy had at times been unduly wasteful and that her counsel often had been uncooperative and intransigent. It recognized that Smith propounded unnecessary and duplicative discovery requests, heedlessly pursued a number of unsuccessful discovery motions, and rushed to court to resolve several minor discovery disputes. Under these circumstances, the district court determined that awarding Appellees fees would not deter parties from bringing worthy FWA claims.

The record shows that the district court was thoroughly familiar with the parties, their attorneys, and the history of the litigation. Accordingly, it was in a better position than we are to evaluate the conduct of all involved in the context of the litigation as a whole. Its evaluation is supported by the record and free from legal error. We are persuaded that the district court acted within its discretion in awarding Appellees attorneys' fees under the FWA.

12

## III

Smith next argues that the district court erred in awarding Appellees attorneys' fees for the expenses they incurred opposing her Rule 11 motion. When a party moves for sanctions under Rule 11, the court "may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). "[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

Rule 11 authorizes a court to sanction a party who submits a pleading for an improper purpose. Fed. R. Civ. P. 11(b)(1). "[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11 advisory committee's note. Ordinarily, this does not require a cross-motion for sanctions, since a court is authorized to award fees to a party that successfully opposes a Rule 11 sanctions motion. *Id.* Thus, when a party files a Rule 11 motion for an improper purpose, the court may award fees to the target of the motion. Such is the case here.

Smith's counsel filed a Rule 11 motion purportedly to correct four misrepresentations in a memorandum that Appellees filed in support of their motion for attorneys' fees. First, Smith alleged Appellees mischaracterized the

13

impact of an administrative ruling from the Department of Labor. Second, she maintained Appellees cited a California appellate case without indicating the opinion had been superceded pending review by the state supreme court. Third, she argued Appellees had misrepresented her Rule 26 disclosures. Fourth, she contended Appellees had made several frivolous arguments regarding Sarbanes–Oxley's fee provision.

The district court considered each alleged misrepresentation in turn. It determined that Smith's arguments about the administrative ruling and Sarbanes–Oxley's fee provisions lacked merit and should not have been included in her Rule 11 motion. The district court likewise determined that while Appellees could have been more careful in citing the California appellate case or characterizing Smith's Rule 26 disclosures, these matters were of no real consequence and did not warrant sanctions. The district court thus concluded that "[n]one of the four grounds raised by [Smith] in her Rule 11 motion present[s] significant concerns in the context of this particular case, and none comes close to warranting the imposition of Rule 11 sanctions." Based on these findings, the district court determined Smith's counsel filed the Rule 11 motion both to harass Appellees, and to file what was effectively an unauthorized reply brief to Appellees' motion for fees. It awarded Appellees attorneys' fees on that basis.

14

The district court acted within its discretion in awarding Appellees attorneys' fees. The relevance of the administrative ruling is debatable. That Smith and Appellees find themselves on different sides of that debate does not mean Appellees misrepresented the significance of the ruling. We likewise agree with the district court that none of arguments pertaining to Sarbanes–Oxley's fee provision in Appellees' memorandum were frivolous or warranted sanctions. Each of these supposed bases for sanctions concerned areas of substantive disagreement between the parties. After reading Smith's arguments, the district court could reasonably have concluded that Smith filed her Rule 11 motion to address the merits of Appellees' arguments, not to correct alleged misrepresentations.

Similarly, we conclude that the district court did not err in its determination that the remaining bases for sanctions concerned trivial matters. Appellees certainly should have included a complete citation to the California appellate case, but their mention of that case was brief, and their argument did not rely on it. Appellees' error describing Smith's Rule 26 disclosures was even less consequential. "Rule 11 motions should not be made or threatened for minor, inconsequential violations . . . ." Fed. R. Civ. P. 11 advisory committee's note. Given the district court's familiarly with the parties and the litigation, we find no

15

error in its determination that Smith's counsel filed the Rule 11 motion at least in part as an improper combative tool.

## IV

Finally, Smith argues that the district court erred in denying her leave to pursue fees under 28 U.S.C. § 1927.[3] We review the district court's denial for abuse of discretion. *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).

The district court set a deadline requiring that all motions for fees be filed within 30 days after entry of judgment, which worked out to be April 14, 2009. Smith moved for leave to seek § 1927 sanctions on January 18, 2011—21 months after the filing deadline had passed. The district court denied the motion, concluding that Smith had not demonstrated any reason in law or equity why she should be permitted to file a motion 21 months after the filing deadline.

Smith argues the district court erred for two reasons. First, she contends that there was no deadline for filing a motion for §1927 sanctions. Rule 54 of the Federal Rules of Civil Procedure ordinarily requires that motions for fees be filed within 14 days of the entry of judgment. Fed. R. Civ. P. 54(d)(2). However,

---

[3] "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

16

motions for sanctions under § 1927 are not subject to this 14-day deadline. *Id.* Smith argues there was thus no deadline for her to file a § 1927 motion.

Smith's argument overlooks that the district court issued a scheduling order requiring any motions for fees to be filed and served within 30 days after the entry of judgment. That order applied to all motions for sanctions and makes no exemption for § 1927 motions. District courts have "unquestionable" authority to control their own dockets. *Canada v. Mathews*, 449 F.2d 253, 255 (5th Cir. 1971).[4] This authority includes "broad discretion in deciding how best to manage the cases before them." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir.1997). The district court had authority to set a filing deadline, and that deadline provides an independent basis for determining that Smith filed her motion 21 months too late.

Smith also argues that she could not have filed for sanctions by the April 14, 2009 deadline, because most of the conduct for which she intended to seek sanctions had not yet occurred. That conduct, Smith argues, "lay in hundreds of hours of labor and stress suffered by Smith's team in the 18 months of unseemly and unworthy fee litigation that came after that date."

---

[4] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Smith did not raise this argument below. Indeed, Smith informed the district court that she had a viable claim for sanctions at the time of the filing deadline but did not pursue that claim because Appellees had suggested they would not seek sanctions themselves. Smith's failure to raise her argument to the district court means she has forfeited it on appeal. *See Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012) ("It is well-settled that we will generally refuse to consider arguments raised for the first time on appeal."). Moreover, apart from any issue of forfeiture, reversal is warranted only if the district court abused its discretion in denying Smith's request for leave. The district court cannot abuse its discretion by failing to consider arguments that are not before it.

Accordingly, we conclude that the district court did not abuse its discretion in denying Smith leave to pursue fees under § 1927.

## CONCLUSION

The district court's decision to award Appellees attorneys' fees under the FWA was within its discretion. Sarbanes–Oxley provides no obstacle to the exercise of that discretion, because the federal statute does not preempt the FWA's fee provision. Furthermore, the district court did not abuse its discretion in awarding Appellees' fees for the costs they incurred opposing Smith's Rule 11

motion, nor did it abuse its discretion in denying Smith the opportunity to seek

§ 1927 sanctions 21 months after the court's deadline for fee motions had passed.

**AFFIRMED.**