[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-11504

Non-Argument Calendar

————————————

ANGELA MICHELLE DAVIDSON,

Plaintiff-Appellant,

*versus*

MTD PRODUCTS COMPANY,
XYZ CORPORATIONS NOS. 1-5,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-02687-SCJ

_____

Before LUCK, ED CARNES, and WILSON, Circuit Judges.

PER CURIAM:

Angela Davidson appeals the district court's grant of summary judgment to MTD Products Company and the denial of her motion to modify the scheduling order. She originally alleged that a manufacturing defect in the foot pad of an MTD riding lawnmower caused it to tip over on top of her. Three years after her accident occurred, after discovery had closed, and more than a year after the court-ordered deadline for amending her complaint had passed, Davidson filed a motion to modify the scheduling order so that she could amend her complaint. In the proposed amended complaint attached to her motion, she advanced an entirely new theory of liability. No longer asserting that a manufacturing defect in the foot pad of the lawnmower caused her injuries, she now alleged that the mower's "governor lever" was defective.

The district court denied Davidson's motion to amend the scheduling order. It reasoned that she failed to show "good cause" for the late amendment as required by Federal Rule of Civil Procedure 16(b) because she had "unfettered access" to the lawnmower for more than two years before she allegedly discovered that the governor lever was the real cause of her injuries. The district court did not abuse its discretion in denying the motion to amend the scheduling order and did not err in granting summary judgment. We affirm.

## I.  BACKGROUND

As Davidson alleges in her initial complaint, which is the operative one, on July 12, 2020, she received as a gift a new Troy-Bilt TB30R riding lawnmower.  While she was operating it for the first time that same day, "the front end of the [lawnmower] flipped up, threw [Davidson] off the seat . . . , overturned on top of her, and caused bodily injuries to her."

Davidson then contacted MTD Products Company, the designer, manufacturer, distributor, and seller of the lawnmower.  A representative for MTD instructed Davidson to take the lawnmower to a local MTD-authorized repair shop, Southern Cart Services, for that specific company to inspect and repair the mower.

On August 27, 2020, Southern Cart allegedly found the problem with Davidson's lawnmower.  It reported: "The foot pad on the clutch/brake lever is spinning freely on the lever, *causing the lever to slip out from under foot* [sic] *very quickly*.  This slipping is causing the mower to launch on takeoff . . . ."  Southern Cart "[r]eplaced the foot pad and push cap."

MTD's representative later testified that, after Southern Cart repaired the issue in the foot pad, he instructed Davidson to "preserve the [lawnmower] as is."  Davidson heeded that advice, took the lawnmower home, put a tarp over it, and left it there — untouched for more than two years — until the expert she retained in this case examined it at her house for the first time on September 15, 2022.

In the meantime, Davidson had filed a lawsuit in Georgia state court against MTD on June 8, 2022, seeking damages for the injuries she alleges she sustained when the lawnmower fell on top of her. MTD removed the case to federal district court. Davidson alleged in her complaint that the mower's mechanical failure in the "foot pad on the clutch/brake lever" caused it to slip from underneath her foot, which made the mower's engine overspeed, leading the mower to launch forward and tip over on top of her.

The district court adopted the parties' joint discovery plan and entered its scheduling order. The court's scheduling order set September 10, 2022, as the deadline for amending pleadings, and April 12, 2023, as the initial deadline to complete discovery. At the parties' request, the court twice extended discovery, setting September 11, 2023, as the final deadline for it to be completed. The deadline for amending pleadings remained September 10, 2022.

In August 2022 — before that deadline had passed — Davidson hired an expert. She had him investigate the lawnmower to determine what caused it to tip over on top of her. The expert first examined the lawnmower at Davidson's house on September 15, 2022 (five days after the deadline for amending the pleadings had passed), but he wasn't able to get the mower to function properly that day. He returned to her house a week later and took the mower with him for further analysis. The expert reported that from October 3, 2022, until March 22, 2023, a period of more than five months, he worked on fixing the mower so that he could examine it more closely.

On March 27, 2023, after Davidson's expert finally got the lawnmower operational, he and MTD's expert conducted a joint inspection of the lawnmower. At that joint inspection, the experts found a problem with the mower different from the foot pad issue; they detected "an issue with the operation of the governor controlling the speed of the engine," which may have caused Davidson's accident.

The day after the joint inspection, on March 28, 2023, Davidson testified in her deposition that her foot was not on the foot pad of the clutch/brake lever at the time the lawnmower lurched forward and tipped over — which meant that the foot pad could not have "slip[ped]" from underneath her foot as she had alleged in her complaint. About a week after that, the parties jointly asked the court to extend the discovery period so that they could, in their words, use the "additional time to analyze the nature of this issue and determine if it contributed to the incident which caused [Davidson's] injuries."

Additional testing of the lawnmower confirmed that what had caused the engine to overspeed was actually the governor lever (and not the foot pad of the clutch/brake lever). That led Davidson to file on October 9, 2023, a motion to amend the scheduling order. The change in the scheduling order would have allowed her to file an amended complaint replacing her allegation that the foot pad defect caused her injuries with an allegation that the governor lever defect caused them.

The next day, MTD filed a motion for summary judgment. It contended that Davidson could point to no evidence that the foot pad could have possibly slipped out from underneath her foot as she had alleged in her complaint — especially given her own testimony that her foot was not on the foot pad at the time of the accident.

In addition to seeking summary judgment, MTD opposed Davidson's motion to amend. It argued among other things that Davidson could not show "good cause" for her belated proposed amendment under Federal Rule of Civil Procedure 16(b)(4). Davidson opposed MTD's motion for summary judgment, but only on the ground that it was moot in light of her pending motion to amend the complaint.

The district court denied Davidson's motion to modify the scheduling order and granted MTD's motion for summary judgment. In denying the motion to modify the scheduling order, the court determined that Davidson had not shown "good cause" as required by Federal Rule of Civil Procedure 16(b). *See* Fed. R. Civ. P. 16(b)(4) (providing that a schedule set by the court's order "may be modified only for good cause and with the judge's consent"). Specifically, it found that Davidson had not demonstrated "diligence" in discovering the alleged defect in the governor lever because she had "unfettered access" to the mower for more than two years after the accident and she never touched it or tried to investigate it during that time — even though all along she knew that

the foot pad had not slipped from underneath her foot as she originally alleged.

As to MTD's motion for summary judgment, the court agreed that Davidson's testimony that her foot was not on the foot pad at the time of the injury contradicted the entire theory of her case as set out in the operative complaint. On that basis, the court granted MTD's motion for summary judgment.

## II. DISCUSSION

We will not disturb a "district court's decision to enforce its pre-trial order . . . on appeal," including its scheduling order, "absent an abuse of discretion." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). "The abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *Deepwater Horizon BELO Cases*, 119 F.4th 937, 944 (11th Cir. 2024) (alteration adopted) (quotation marks omitted). That means that under the abuse of discretion standard, we may "affirm the district court even though we would have gone the other way had it been our call." *In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994). Whether there is a genuine issue of material fact preventing the entry of summary judgment is a question we review *de novo*. *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 753–54 (11th Cir. 2023).

To amend her pleading under Federal Rule of Civil Procedure 15(a), a party normally need only demonstrate that "justice so requires." But when a party has moved to amend after the district court's deadline for doing so in the scheduling order has passed, she

must also "show good cause why leave to amend the complaint should be granted," as required by Rule 16(b). *See Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366 (11th Cir. 2007); *see also Sosa*, 133 F.3d at 1419 ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."). Rule 16(b)'s "good cause standard precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (quotation marks omitted).

Davidson contends that the district court abused its discretion in finding a lack of "good cause," and she asserts these facts in support of her contention: (1) an MTD-authorized repair shop, Southern Cart, indicated that the issue with the lawnmower was the foot pad in the brake/clutch lever, so Davidson had no reason to inspect it further; (2) an MTD representative told Davidson to leave the lawnmower "as is" after she told him about the supposed issue in the foot pad, and she did just that; (3) her hired expert needed to complete extensive repairs to restore the mower to be operational and also needed to coordinate restoration efforts with MTD's expert for fear of being accused of tampering by MTD; (4) only after the lawnmower was restored was her expert able to find that the true cause of her injury was the governor lever; and (5) but for a procedural issue in her original motion to amend, her motion would have been filed within the discovery period.

We address each of Davidson's points in turn.  But in short, none of them demonstrates that the district court abused its discretion in finding a lack of "good cause" to justify Davidson's belated motion to amend her complaint to assert an entirely new theory of liability.  That's so because she failed to show that she acted with "diligence" to discover the alleged defect in the governor lever within the schedule set by the court's order.  We've long recognized that "[d]istrict courts have 'unquestionable' authority to control their own dockets.  *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (quoting *Canada v. Mathews*, 449 F.2d 253, 255 (5th Cir. 1971) (footnote omitted)).  And that "authority includes broad discretion in deciding how best to manage the cases before them."  *Id.* (quotation marks omitted).  The district court did not abuse its broad discretion when it exercised that authority in this case and refused to modify its scheduling order a third time to allow Davidson to amend her complaint.

Davidson testified in her deposition that the foot pad had not slipped from under her foot as she had alleged in the complaint. Given that admission, it was not an abuse of discretion for the district court to reason that Davidson could not rely on Southern Cart's opinion that the foot pad had caused the accident by slipping under her foot.  Reliance on "facts" that a party knows are untrue does not demonstrate the diligence required to modify a scheduling order.

As for the fact that MTD instructed Davidson to preserve the lawnmower "as is," MTD did that *before* Davidson ever filed

this lawsuit against it.  It was unreasonable for Davidson to interpret MTD's pre-litigation advice to preserve the mower as a prohibition on any further investigation into the cause of her injuries. And because Davidson knew her foot was not on the foot pad at the time of the accident, she cannot blame MTD for her failure to independently inspect the lawnmower before bringing suit.  The failure to have it inspected before filing shows a *lack* of diligence on her part.  *See Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1299 (11th Cir. 2007) (affirming the denial of a motion to amend a scheduling order to add affirmative defenses because the facts underlying the addition, "with some investigation, . . . could have [been] discovered," and noting that the failure "to conduct such investigation does not equate to 'good cause'").  Because Davidson's own testimony established that she knew all along that the foot pad did not slip from under her foot as she had originally alleged, the district court did not abuse its discretion when it rejected Davidson's contention that she lacked a basis to conduct an independent inspection of the lawnmower.

Nor did the district court abuse its discretion in finding that Davidson's expert's delay in attempting to restore and analyze the mower failed to show diligence on her part.  It's undisputed that the mower sat at Davidson's house — untouched — for more than two years after the date of the accident, including for four months after she filed this lawsuit.  All the while Davidson knew her foot had not been on the foot pad when the mower malfunctioned.  Despite that knowledge, her expert did not even attempt to examine the mower within the deadline for amending the pleadings.  And

then once he did attempt to examine it, it took him more than six months to get the lawnmower operational. Davidson contends that her expert's restoration efforts took so long because he didn't want to be accused of tampering with the mower by MTD. But the district court did not err in finding that the half-year delay showed a lack of the "diligence" required by Rule 16(b), particularly when the purported threat of being accused of tampering is merely speculative. *See Millennium Partners*, 494 F.3d at 1299 (affirming the denial of a motion to amend the scheduling order where the facts underlying the proposed amendment, "with some investigation, . . . could have [been] discovered," and noting: "The fact that [the party that had moved to amend the scheduling order] failed to conduct such investigation does not equate to 'good cause'"). Davidson has not shown that she acted "diligently" when she failed to ask for MTD's permission to inspect the mower and then blamed her failure to do so on what she imagined MTD's response would have been.

The district court likewise did not abuse its discretion in rejecting Davidson's argument that she showed "good cause" when, after she discovered that the governor lever was a defect in June 2023, she promptly moved to add to her complaint an allegation about that new theory of liability. The court reasoned that Davidson had not given it any "basis to find that she could not have learned of the alleged defect [in the governor lever on which] she now seeks to base her claim even before she filed this lawsuit." We agree. *See Sosa*, 133 F.3d at 1418–19. The asserted promptness with which she attempted to add that claim to her complaint *after* she

discovered it does not excuse her lack of diligence in discovering it. *See So. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1242 (11th Cir. 2009) (affirming the district court's denial of a motion to modify the scheduling order after a crucial fact was unearthed during discovery and noting that "[e]ven assuming that [crucial fact] was the type of information discovery is intended to uncover, Southern Grouts dallied too long in discovering it").

And the final point, that Davidson filed her original motion to amend the scheduling order before the end of discovery, also does not show "good cause." The test for "good cause" does not require consideration of whether the motion to amend was filed during discovery. *See* Fed. R. Civ. P. 16(b). Instead, it requires consideration of whether the party seeking the amendment was "diligent." *See Sosa*, 133 F.3d at 1418.

The district court did not abuse its discretion in denying Davidson's motion to modify the scheduling order or err in granting summary judgment for MTD.

**AFFIRMED**.