**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12907

Non-Argument Calendar

_____

TERYL JAMES,

*Plaintiff-Appellant,*

*versus*

FEDEX FREIGHT, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:21-cv-01395-CLM

_____

Before NEWSOM, GRANT, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Teryl James appeals the district court's order granting summary judgment to FedEx Freight, Inc. (FedEx) on his claims of interference and retaliation under the Family and

Medical Leave Act of 1993 (FMLA), associational discrimination under the Americans with Disabilities Act (ADA), and its decision to admit FedEx's statement of material facts because James failed to dispute them.

On appeal, James first argues that he sufficiently disputed FedEx's factual assertions under Federal Rule of Civil Procedure 56(c). Second, he argues that summary judgment for FedEx was inappropriate for the FMLA interference claim because there were genuine disputes of material fact, the evidence supported his claim, and FedEx failed to articulate a legitimate reason for terminating him. Third, he argues that the district court failed to account for contradictory record evidence before finding that no reasonable juror could find that FedEx fired him because of his decision to seek paid leave or that his discipline for leaving early was motivated by an anti-FMLA-leave bias. Finally, James argues that the district court's determination that he was not a qualified individual for a claim of associational discrimination under the ADA was based on an erroneous conclusion that he was disciplined for failure to comply with FedEx's disability-neutral attendance policies.

After careful review, we find the district court did not err in admitting FedEx's facts, granting summary judgment to FedEx on the FMLA retaliation and ADA associational discrimination claims. But we do find that a genuine dispute of material fact forecloses summary judgment on James' FMLA interference claim and reverse on that issue.

# I.

James worked as a full-time freight handler for FedEx from 2017 to 2020. As a freight handler, James loaded and unloaded trailers on the dock. James' shift started at 5:30 p.m. and ended at 2:30 a.m. the next day. Before clocking out at the end of a shift, FedEx required freight handlers to check with the dock supervisor to make sure no other trailers required loading or unloading. If there were still trailers that needed to be unloaded at the end of the shift, freight handlers were expected to work overtime. In November 2018, James left work at the end of his shift without notifying a supervisor. FedEx gave James a "coaching session" for violating the rule.

In March 2020, James announced that his wife was pregnant with their first child. He specifically told Rickey Albert, the service center manager of FedEx, and Sadiou Macalou, the operations manager. Shortly after the announcement, James asked Albert about the FMLA in the event he needed it for his wife's pregnancy. Albert told James he was "moving too fast" and that he would not need to inquire about leave until after the child was born.

In June 2020, his wife's doctor told her that her pregnancy was "high risk." As such, she would no longer be able to work or drive and that she would need James to care for her as much as possible. James told his supervisors, Macalou and Albert, of his wife's serious condition and told them there would be times when he needed to leave early or miss days to care for his wife. No one informed James of his rights under the FMLA.

On June 25, 2020, James informed Macalou that he would need to leave at the end of his shift to ensure his wife was okay and transport her to an appointment. After finishing his shift and trailer assignments, James was leaving work for the day. Macalou stopped him and told him he had to work overtime. James responded that he had already worked some overtime that day and that he needed to get home to his wife who was getting more ill due to her pregnancy. James refused to stay and left at his originally scheduled end time. Management recorded the incident on FedEx's Corrective Action Process Coaching Session form, which was added to James' file following this incident. It stated that "James refused [to] unload another trailer due [sic] he was on his 8th hour of duty . . . [it was] explained to him as a full time employee you are required to work overtime when needed."

On July 1, 2020, James finished his trailer assignments and completed his scheduled shift near 2:30 a.m. Throughout his shift, his wife was giving him updates on pain she was experiencing and her fear that something was wrong with her pregnancy. At the end of his shift, James clocked out and began to leave the worksite with a group of other freight handlers. Macalou stopped James as he was leaving and told him to come to the office to talk. James told him that his wife was having health complications related to the pregnancy and he needed to leave. Macalou informed James that this would be considered job abandonment. James left the worksite. The next day, after reviewing the report of the July 1 incident, Albert requested James' termination.

On July 2, James took his wife to the hospital. Their doctors determined that the pregnancy was in such a dangerous state that the baby had to be delivered immediately—two and a half months early. After the baby was born, James applied for and received paid parental leave from July 6 to 17.

On July 20, James submitted FMLA paperwork for additional leave, which FedEx later approved. That same day, FedEx's employee relations advisor, John Hodge, contacted James and informed him that he was under investigation for job abandonment. James explained to Hodge his wife's medical issues and that he was awaiting the FMLA decision from the U.S. Department of Labor. A couple of days later Hodge received an email alerting him that James had been approved for FMLA leave. Later that day, Hodge terminated James.

James then sued FedEx. FedEx moved for summary judgment and filed a statement of facts. James responded to FedEx's statement of facts in one sentence stating he disputes "each of the 'facts' as asserted in [FedEx's] brief and, instead, relies on those facts stated herein." The district court found that James violated Rule 56(c) and the court's initial order for disputing material facts. Federal Rule of Civil Procedure 56(c) requires James to cite "particular parts" of the record if he disputes one of FedEx's fact assertions. The court required James to (a) include his disputes in separately numbered paragraphs that mirrored FedEx's stated facts and (b) cite to the part(s) of the record that support his dispute. After FedEx pointed to James' non-compliance, the district court gave

James one more opportunity to comply by allowing James to file a sur-reply, and he failed to do so. The district court then found that FedEx was entitled to summary judgment on all of James' claims. James timely appealed.

## II.

"District courts have unquestionable authority to control their own dockets." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (internal quotation marks omitted). "This authority includes broad discretion in deciding how best to manage the cases before them." *Id.* (internal quotation marks omitted). We review district courts' decisions managing their dockets for abuse of discretion. *See, e.g., Young v. City of Palm Bay*, 358 F.3d 859, 863–64 (11th Cir. 2004).

In *Mann v. Taser International, Inc.*, we affirmed the district court's admission of the defendants' statement of material facts because the plaintiffs' "convoluted, argumentative and non-responsive" answers did not comply with the court's local rules. 588 F.3d 1291, 1302–03 (11th Cir. 2009). The plaintiffs were on notice of the deficiencies yet failed to cure them. *Id.* at 1303. But we concluded that even when a statement of material facts is deemed admitted, we "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Id.*

Here, the district court did not err in deeming FedEx's statement of facts as admitted under its authority to manage its docket. The district court still looked to whether FedEx's facts were supported by the record before assuming they were true. And, as

required by the rules, the court assumed all facts asserted by James and supported by some record evidence were true.

### III.

We review a district court's grant of summary judgment de novo, "viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (per curiam).

The FMLA entitles employees to take leave for certain family and medical reasons. *See* 29 U.S.C. § 2612 (a)(1). An eligible employee may use leave for the birth of a child and to care for a spouse who has a "serious health condition." *Id.* § 2612(a)(1)(A), (C). Expecting parents are entitled to FMLA leave "if needed to care for a pregnant spouse who is incapacitated or if needed to care for her during her prenatal care." 29 C.F.R. § 825.120(a)(5). Care for a spouse includes situations where, "because of a serious health condition," the spouse "is unable to transport himself or herself to the doctor." *Id.* § 825.124(a). In addition to "one continuous period" of leave, employees may take "[i]ntermittent leave" for "periods from an hour or more" when needed. 29 C.F.R. § 825.202(b)(1).

To preserve the availability of these rights, the FMLA creates two types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1); and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity

protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c).

A covered employer may not interfere with, restrain, or deny the employee's exercise or attempted exercise of his FMLA rights. 29 U.S.C. § 2615(a)(1). "To establish an FMLA interference claim, an employee must show []he was [1] entitled to a benefit under the FMLA and [2 his] employer denied [him] that benefit." *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021). "But a technical FMLA violation alone is not enough." *Id.* Employees must demonstrate that the alleged interference caused them harm, "and that harm must be remediable by either damages or equitable relief." *Id.* (internal quotation marks omitted).

To show that he was entitled to an FMLA benefit, an eligible employee must demonstrate that he sought leave for a qualifying reason and provided the employer with notice meeting certain timing and content criteria. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1194–96 (11th Cir. 2015). For foreseeable leave, the employee must give the employer at least thirty days' advance notice, or as much notice as practicable if thirty days is not feasible. *See* 29 C.F.R. § 825.302. The employee is not required to mention the FMLA when giving notice, but the notice must be "'sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and of the anticipated timing and duration of the leave.'" *White*, 789 F.3d. at 1196 (quoting 29 C.F.R. § 825.302(c)) (alteration adopted). "If the need for leave is *unforeseeable*, an employee need only 'provide sufficient information for

[his] employer to reasonably determine whether the FMLA may apply to the leave request.'" *Id.* (quoting 29 C.F.R. § 825.303(b)) (alteration adopted).

Once an employer knows that an employee's leave may qualify for FMLA, the employer is obligated to evaluate whether the requested absence does, in fact, qualify for FMLA protection. *Ramji*, 992 F.3d at 1243. The employer must also provide notice to the employee of their eligibility for and rights under the FMLA within five business days, absent extenuating circumstances. *Id.* (citing 29 C.F.R. § 825.300).

An employer may be liable for interfering with FMLA rights even if it did not intend to deny the benefit, as "the employer's motives are irrelevant." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (quotation marks omitted). "In an FMLA interference case, courts examine not whether the FMLA leave was the *but-for* cause of an employee's discharge or demotion, but rather whether it was the *proximate* cause." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241–42 (11th Cir. 2010).

An employer may defend against an interference claim by showing that it "would have terminated the employee regardless of [his] request for or use of FMLA leave." *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018). Although the employer has the burden of establishing this affirmative defense at trial, the analysis at the summary judgment stage is "whether the evidence, viewed in the light most favorable to the nonmoving party, establishes as a matter of law that the employer would have terminated

the employee absent [his] request for FMLA leave." *Id.* at 1331 & n.6.

Here, the district court granted summary judgment for FedEx because it determined that for the period prior to James' wife going into labor on July 2, 2020, James cannot show prejudice. That is, he could not show that FedEx's actions prevented him from driving his wife to doctor's appointments or caring for her in an emergency. Then for the period after labor, James cannot show that FedEx interfered with his FMLA rights because he received paid parental leave. But James argues that the prejudice he suffered pre-labor was not the missed appointments, but being fired from his job as a direct result of leaving after completing his shift to care for his wife. Had he known he could take FMLA leave for that period, he would not have been fired for refusing to work overtime.

In *Ramji*, we found that an employee had suffered prejudice when she lost her job after failing a physical "essential-functions test." 992 F.3d at 1247. We reasoned that a reasonable jury could find that had the employee been notified of her FMLA rights she could have structured her leave differently to fully recover after injury before taking the "essential-functions test" and thus the employer's failure to notify prejudiced her ability to obtain reinstatement. *Id.* We held that "a material issue of fact exists over whether an . . . FMLA leave period would have made a difference to whether Ramji could have passed her essential-functions test and returned to work." *Id.* at 1246. Following this reasoning, James can survive summary judgment on his interference claim then if a

reasonable jury could conclude that he was entitled to FMLA benefits, and FedEx's interference with his benefits caused him to be fired.

We begin by considering whether James showed he was entitled to an FMLA benefit. *See White*, 789 F.3d at 1194–96. Meaning that he sought leave for a qualifying reason and provided proper notice to his employer. *Id.* The district court faults James for being unable to point to a specific appointment or emergency on June 25 or July 1 to 2, the two dates culminating in James' termination. But James maintains that he told his supervisors that he would need to leave at the end of his scheduled shifts to *care* for his wife during this time. 29 C.F.R. § 825.120(a)(5) (Expecting parents are entitled to FMLA leave "if needed to *care* for a pregnant spouse who is incapacitated or if needed to care for her during her prenatal care.") Specifically, James states that his "wife was having progressively worsening pain and discomfort and we were concerned with both her and our child's health. My wife discussed with me that I needed to get back home as quickly as possible to be with her during this difficult time and to be on the ready to take her to the hospital if needed."

Then, on July 1 and 2, James' wife was experiencing pain and discomfort, so he attempted to leave work after his scheduled shift around 2:30 a.m. Sadiou stopped him from leaving and told him he needed to check with the dock supervisor to see if he needed to work overtime. James told Sadiou that he "was trying to get home to care for [his] wife who was having serious health complications

related to her pregnancy." James offers enough evidence to create a genuine dispute of material fact as to whether his wife needed care, a qualifying reason for leave under the FMLA, and that FedEx had notice. 29 C.F.R. § 825.120(a)(5). "Requiring ironclad proof is more than summary judgment requires, and in a situation like this one, it would allow an employer to benefit from its failure to comply with the FMLA and provide the required notice." *Ramji*, 992 F.3d at 1247. Had James used his FMLA leave to which he was entitled, to get home to his wife rather than working overtime, he would not have been fired for failing to work overtime.

FedEx, as an affirmative defense, argues that James was fired for failing to check in with a supervisor rather than for refusing to work overtime. *Batson* 897 F.3d at 1331 (explaining that an employer may defend against an interference claim by showing that it would have terminated the employee regardless of his use of FMLA leave). But FedEx's own communications undermine that argument. FedEx's coaching session memo, dated June 25, 2020, stated that James was reprimanded because he "refused to unload another trailer due he was on his 8th hour of duty" and that "as a full time employee [he was] required to work overtime when needed." When Hodge investigated FedEx's supervisors' recommendation that James be fired, he asked James whether he left work "even though leadership explained that they still had additional assignments to be completed?" Hodge also asked whether James had "received corrective action for leaving work without checking with leadership, and additional assignments needed to be completed?" These questions highlight that there is at least an issue

of fact on why James was fired, going both to James' showing of prejudice and FedEx's affirmative defense.

Making reasonable inferences in James' favor, as we must, a reasonable jury could find that James was reprimanded, and ultimately fired, not for failing to check in, but for refusing to work overtime and complete "additional assignments." *Batson*, 897 F.3d at 1331 & n.6. (The analysis at the summary judgment stage is "whether the evidence, viewed in the light most favorable to the nonmoving party, establishes as a matter of law that the employer would have terminated the employee absent [his] request for FMLA leave.") Had James used the intermittent FMLA leave that he was entitled to so he could care for his wife's pregnancy complications, he would not have been fired for refusing to work overtime.

The district court erred in granting summary judgment on the FMLA interference claim for the period preceding James' wife's labor because a reasonable jury could find that FedEx failed to notify James of his FMLA rights and that interference prejudiced James.

## IV.

To prove FMLA retaliation, an employee must show that his employer intentionally discriminated against him via an adverse employment action for having exercised a right under the FMLA. *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017). The burden on a retaliation claim is heavier than the burden to prove interference. *See, e.g.*, *Strickland v. Water Works &*

*Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001). The employee must also show that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Id.* (quotation marks omitted).

A FMLA retaliation claim can be supported by either direct or circumstantial evidence. *Lapham v. Walgreen Co.*, 88 F.4th 879, 889 (11th Cir. 2023). When a plaintiff presents only circumstantial evidence, we apply the *McDonnell Douglas* burden-shifting framework. *Id.* (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 801–05 (1973)). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing that (1) the plaintiff engaged in statutorily protected conduct, (2) the plaintiff suffered an adverse employment action, and (3) there is some causal relation between the two events. *Id.* The "proper causation standard" for FMLA retaliation claims is "but-for causation." *Id.* at 893.

Here, the district court again split the relevant time periods into pre and post- labor finding that (1) there was no causal connection for the pre-labor period because FedEx "disciplined James for leaving without checking-in with a supervisor before and after his wife became pregnant," and (2) for the post-labor period "[b]ecause James' supervisors decided to fire him before James requested parental leave, no reasonable jury could find that [FedEx] fired James because he sought post-birth, paid parental leave."

Regarding the pre-labor period, James argues that there is undisputed evidence that none of the other employees who left at

the same time as James were interviewed to determine if they checked with a dock supervisor before leaving. For the post-labor period, James argues that Hodge decided to terminate James after he received notification of James' FMLA approval. Hodge also admitted that he did not conduct a thorough investigation prior to terminating James.

We agree with the district court that James failed to show a causal connection between his FMLA-protected activity and the adverse employment actions. For the pre-labor period, James fails to show a causal connection because James was disciplined for not checking in with a supervisor both before and after his wife became pregnant. In the post-labor period, while Hodge did grant James' supervisors' request to terminate James on the same day he learned his FMLA leave was approved, Albert sought James' termination on July 2, before James requested leave.

In sum, the district court did not err in granting summary judgment on the FMLA retaliation claim because James did not tie any alleged retaliation to the exercise of his rights under the FMLA.

## V.

To establish a prima facie case of associational discrimination under the ADA, a plaintiff must show that (1) he was subjected to an adverse employment action, (2) he was qualified for the job at that time, (3) his employer knew at that time that he had a relative with a disability, and (4) the adverse employment action occurred under circumstances raising a reasonable inference that his relative's disability was a determining factor in his employer's

decision. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230–31 (11th Cir. 1999). For the reasons stated in Part IV, James cannot make the required showing for prong four—that his wife's pregnancy was a determining factor in FedEx's employment decisions.[1] Accordingly, the district court did not err in granting summary judgment on the associational discrimination claim.

## VI.

To summarize, we reverse summary judgment in favor of FedEx on James' FMLA interference claim because of the remaining disputes of material fact. But the district court did not abuse its discretion in deeming FedEx's facts admitted. Finally, we affirm summary judgment for James' FMLA retaliation claim and ADA associational discrimination claim because James failed to show a causal connection.

**AFFIRMED IN PART AND REVERSED IN PART.**

---

[1] We may "affirm for any reason supported by the record, even if the district court did not rely on that reason." *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1294 (11th Cir. 2016) (internal quotation marks omitted).